(13 App. Div. 508.)

### HORTON v. VULCAN IRON-WORKS CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. MASTER°AND SERVANT—CONTRACTOR—EVIDENCE.

The relation of master and servant between defendant and plaintiff is not established by evidence that plaintiff, who had been working for defendant, made a contract with one H., defendant's treasurer and manager, to erect a wall on the boundary line between land owned and occupied by H. and land also owned by H., but occupied by defendant; that against the protest of H. plaintiff built a scaffold for his work on defendant's side of the line; and that he was cautioned by defendant's foreman to avoid the set screw on a revolving shaft by which he was injured while erecting the wall.

2. DAMAGES—OBVIOUS RISKS—FACTORY ACT.

Laws 1892, c. 673, § 8 (Factory Act), providing that all set screws and machinery shall be properly guarded, does not change the law of assuming obvious risk of the business undertaken, and therefore a person working about premises, and conversant with a shaft in which was a set screw, and the hours of its revolutions, takes the risk of the situation where he seeks to pass under the shaft while it is in motion.

3. SAME—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

A person is guilty of contributory negligence who contracts to build a wall by the side of a shaft on which was a set screw, and in doing the work attempts to crawl under the shaft while it is in motion, after being cautioned of the danger.

Appeal from trial term, Oswego county.

Action by Jonathan Horton against the Vulcan Iron-Works Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Plaintiff received injuries on the 28th day of June, 1895, while at work laying up a brick wall, which he and one Petrie had agreed to erect in consideration of the price of $4.50 per 1,000 brick, in a block situated at the corner of Bridge street and West Second street in the city of Oswego. The wall was to be erected from the east side of Second street westerly about 50 feet, to divide the premises owned by one Holbrook from the premises owned by the defendant. South of the wall some 10 feet commenced the premises of the defendant, and upon its premises was situated a machine shop, in which was a shaft upon which were pulleys and collars, and in the northerly pulley on the shaft was a collar in which was a set screw some five-eighths of an inch square, and the end set out seven-eighths of an inch. The shaft in the defendant's building extended north and south at right angles to, and came within a few inches of, the line of the brick wall plaintiff was laying up. Holbrook was the manager and treasurer of defendant company. He had first made a contract with plaintiff and his partner to rebuild defendant's machine shop. Then individually Holbrook contracted for a stone wall to be built between the land occupied by him and the company, respectively. Afterwards he

made a contract for the erection of a brick wall on the stone wall as a foundation, and in the construction of this plaintiff was injured.

In the complaint it is alleged "that, as plaintiff was passing under said shaft, in pursuance of his employment, his clothing caught on said set screw or bolt, and, said shaft being in rapid motion, was whirled about said shaft, and most seriously injured by being dashed against the beams, posts, and pieces of timber in close proximity to said shaft." Plaintiff alleges that the accident was caused through the negligence of the defendant, and that the injuries which he sustained were inflicted without any negligence or fault on his part. The answer, among other things, alleges that the injuries received by the plaintiff were "solely by reason of and through his own carelessness and negligence, and that by reason of such carelessness and negligence, which so caused and contributed to such injury and accident, the plaintiff cannot recover in this action." At the close of the plaintiff's evidence the defendant moved for a nonsuit on several grounds. The motion was denied, and an exception was taken.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

D. P. Morehouse, for appellant.

L. W. Baker, for respondent.

HARDIN, P. J. From the evidence it is quite clear that Holbrook owned the premises where the wall was being constructed, although the same had been for some considerable period of time in the possession of the defendant. Holbrook entered into an agreement with plaintiff and his partner, Petrie, to perform services in the erection of a wall at the price of $4.50 per 1,000 brick. They commenced the erection of the wall, and after it had progressed so as to require a platform to work upon they built a platform or scaffold on the south side of the wall, next adjacent to the property of the defendant. It appears that when they commenced the erection of the wall Holbrook remonstrated with them very strongly against building a scaffold on the south side of the wall, insisting that it would interfere with the business of the defendant, and expressed his strong desire to have them build a scaffold on the north side of the wall. However, they persisted in using the south side for the erection of a scaffold. After they had erected the wall so far as was convenient by means of the first scaffold, they erected a second one, which came within some 2½ feet of the shaft, and they placed runways from the scaffold in a southerly direction into the premises of the defendant. The business of the defendant was in progress, and it was in daily use of the machinery in its building, using the shaft for the purpose of propelling the same during the whole period of time that the plaintiff and his partner were engaged in the erection of the wall. Prior to the commencement of the erection of the brick wall the plaintiff and his partner had erected a foundation wall of stone under a contract to do the same for $284. The contract for the erection of the brick wall was made with Holbrook. It was not in writing. At the time they commenced the erection of the wall, the premises north of it were vacant, and there was an entrance to the property from Bridge street. It appears that when Holbrook remonstrated with them against using scaffolds on the south side instead of on the north side, they replied:

"It would be more trouble to scaffold it, to put up a scaffold there. They could build on the scaffold with very little scaffolding. They insisted upon building on that side."

### Petrie testifies:

"It would have been possible to have had one mason work on the east side of the shaft and another work from the west side to him, and not have anybody pass under there. We didn't lay this wall from the north side because it would have cost about $10 more for building the scaffolding, and it was the handiest to lay it on the side we laid it on."

Evidence was given tending to show that neither Horton nor Petrie, nor any one in their behalf, ever requested the defendant to stop the shaft. Seeber, an architect, who prepared the diagrams that were used in evidence, testified:

"The distance from the bottom of the post to the shaft is 12 feet 6 inches, as I remember it. The shaft is 2½ inches in diameter. The shaft is about 8 inches from the post. The outer pulley on this shaft is 18 inches in diameter."

### The witness King testifies:

"I saw Mr. Horton at a time when he was passing under this shaft. I saw him do so the same morning he got hurt. I heard Mr. Smith speak to him in reference to doing so. Mr. Smith says: 'Be careful going under there. You will get caught on the shaft.' "

### This witness adds:

"You can see that set screw, standing on the ground, plainly, when the shaft is revolving. At that time this shaft was revolving about 50 revolutions a minute."

Plaintiff testified that he had followed the mason business for 48 years; and said:

"I have had accidents before. I had one when I worked on the Syndicate Block. I think it was due to my carelessness. I stepped upon a plank, and it tipped up, and I fell into the cellar. I had an accident when I built a building at Wolcott. I have had a good many of them. I don't think I have the reputation among the masons of being rather reckless and careless in putting up scaffolds, and in working around dangerous places. I don't know as I am a little more careless in those matters than the general run of masons."

### He also testifies:

"I knew there was a shaft there. * * * Only I looked up, and knew the shaft was there. * * * I passed under there, of course, for my own convenience in working. I had to bend over to get under there. The shaft was not as far up from the platform as my hip was from the floor. I think I got down on my knees. —I got down on my knees and crawled under,—got under that way."

It appears by the evidence that when he was passing under the shaft his clothing was caught, and he was carried around several times until the shaft was stopped, and that he received a broken arm and a broken leg and was otherwise injured. The evidence failed to establish the relation of master and servant between the plaintiff and the defendant. Russell v. Buckhout, 87 Hun, 47, 34 N. Y. Supp. 271; Olive v. Marble Co., 103 N. Y. 292, 8 N. E. 552. In the course of the body of the charge the learned trial judge said:

"The rule of law in regard to master and servant, if you find that that relation exists here, is that it is the duty of the master, where he puts the servant in a dangerous place to work, to guard him against the perils and dangers of his position. That is only so, gentlemen, I will charge, with reference to the servant and the master. If you find here that the relation of master and servant existed between this defendant and this plaintiff, then you can apply that rule."

Later the court instructed the jury, viz.:

"The jury may take into consideration all the facts and circumstances in regard to this case, and find for themselves what they think the fact is in regard to his position,—whether the plaintiff was there in the condition of a servant, or whether he was there and the defendant was in the position of owner, or in possession of these premises."

To that instruction the defendant took an exception, "and particularly to that part of your honor's charge in which you say that the jury may find and determine as to whether or not the plaintiff was there as a servant of the defendant." In response thereto the court said, "I leave it to them as a question of fact." Thereupon the defendant took an exception. Inasmuch as the evidence fails to establish the relation of master and servant between the plaintiff and the defendant, we think the exceptions present error requiring a new trial.

2. The evidence tends strongly to indicate that the plaintiff took the risk of the situation when he sought to pass under the shaft, which he knew was in motion. He had been in and about the premises a sufficient length of time to become conversant with the shaft, and all its conditions when in motion.

In Cobb v. Welcher, 75 Hun, 283, 26 N. Y. Supp. 1068, it was said that, even under the factory act the proprietor of a factory is not an insurer of the safety of his employés, "nor does it require him to guard against extraordinary accidents which a careful and prudent man could not foresee or anticipate as liable to occur."

In chapter 673, section 8, of the Laws of 1892, it is provided that "all vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, and all machinery of every description therein shall be properly guarded." That statute has received interpretation in Glassheim v. Printing Co., 13 Misc. Rep. 174, 34 N. Y. Supp. 69, in which case it was said:

"The owner of premises occupied for business purposes is only required to use reasonable care and prudence in keeping the property in such condition that persons who go there shall not be unnecessarily exposed to danger."

In that case the belt was covered to a height of nine feet from the floor, and it was held that the machinery was properly guarded, within the meaning of the factory act. In that case it was said:

"The shafting was suspended from the ceiling at such a height as to render it impossible, under ordinary circumstances, that an accident like this could have occurred. The court will take judicial notice that men are not nine feet high; and, therefore, without climbing up to it, there was no possibility of any danger either from the shafting or the set screw."

In Graves v. Brewer, 4 App. Div. 327, 38 N. Y. Supp. 566, where the danger was apparent, it was held that the injured party took the risk, and that the liability was not changed by the factory act.

In Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, it was held that:

"There is no reason in principle or authority why an employé should not be allowed to assume the obvious risks of the business, as well under the factory act as otherwise."

Although, as we have already intimated, the plaintiff was not an employé of the defendant, we think the facts and circumstances dis-

closed in relation to his conduct antecedent to and concurrent with the injuries received, with the knowledge which he possessed of the shaft, and, presumptively, of the set screw, were such that he was guilty of contributory negligence at the time he received the injuries of which he complains.   The evidence found in the appeal book fails to satisfy us that he was free of contributory negligence. The foregoing views, if adopted, lead to a reversal.

Judgment and order reversed, and a new trial ordered, with costs to abide the event.   All concur.   .