Thomas F. Dillon, Respondent, *v.* The National Coal Tar Company, Appellant.

1. Factory Act — Unguarded Revolving Shaft. Where a revolving shaft, by which a servant was injured while at work near it, was elevated fourteen or fifteen feet above the floor of a factory and could be reached only by the use of a ladder, the master cannot be charged with negligence under the Factory Act (L. 1886, ch. 409, as amd. by L. 1892, ch. 673, § 8) in failing to properly guard it.

2. Master and Servant — Master Not Liable for Failure to Warn Servant of Danger of Work. Where it appears in an action brought by a servant against a master to recover for injuries sustained by contact with a rapidly revolving shaft, near which the plaintiff was directed to work, that the plaintiff was a steamfitter of many years' experience, that he had some knowledge of the dangers attendant upon work in proximity to revolving shafts and that the danger was just as obvious to him as it was to defendant, the latter is not liable because it failed to have plaintiff instructed as to the dangerous character of the work; and the fact that the danger was enhanced by a keyway running the entire length of the shaft, of which the plaintiff had no knowledge, is immaterial, since where the danger is obvious and great, as in the case of a revolving shaft, it is not necessary to give warning of all of the elements which serve to enhance the risk.

*Dillon* v. *National Coal Tar Co.*, 88 App. Div. 614, reversed.

(Argued March 14, 1905; decided April 11, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 19, 1903, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The action is based upon alleged negligence resulting in personal injuries. On the 15th of January, 1901, the plaintiff, a steamfitter forty-eight years of age, and employed by the defendant, sustained the injuries complained of. He had been directed by the foreman of the defendant to take down a line of pipe which ran along and near the ceiling of one of the rooms in the defendant's factory. While engaged in this work a portion of his clothing was caught on a revolving shaft in consequence of which he was whirled around, thrown down and severely injured. The case was submitted to the jury and the plaintiff recovered a verdict for $2,250. On appeal the judgment entered upon the verdict was affirmed by the Appellate Division, one of the justices dissenting.

The room in which the plaintiff was at work at the time of the accident was about 17 or 18 feet high. The shaft which caused his injuries ran along the ceiling of the room, and about two feet therefrom. Above the shaft and at a distance

variously estimated at from 15 inches to three feet, was the pipe line which plaintiff was engaged to take down. There was a groove called a keyway, running along the entire length of the shaft, about three-eighths of an inch deep and seven-eighths wide, and the shaft was revolving at the rate of about 150 revolutions a minute.

The plaintiff, with a helper, had been at work some hours taking down the pipe. At the place where the accident happened they had placed a ladder against the pipe and when at work on the pipe the plaintiff was between it and the shaft, a part of his body being above and a part below the shaft, with his back towards it. While in this position, and dressed in overalls and a jumper or jacket closely buttoned around him, he started to descend the ladder, when a portion of the clothing on his back was caught by the shaft with the result above stated. The plaintiff testified, as did the helper, that it was necessary for him to get into the position described in order to take down the pipe. On the other hand, the foreman of the defendant testified that it was not necessary, but that he could have reached the pipe without getting into proximity with the shaft. The exact situation of the pipe with respect to the surroundings does not clearly appear in the record. The plaintiff received no specific directions as to the manner of doing the work, the details being left to his judgment. The plaintiff said to the foreman of the defendant, who was a mechanical engineer having general charge of the work, that "We could do this work more convenient and handier if the machinery was stopped." The foreman replied: "Go right away and take the pipe down. I have got to get it down out of here."

The plaintiff was an experienced steamfitter, having pursued that occupation for about 30 years. He had been in the employ of the defendant for a year or more prior to the accident. He testified that the "business of a steamfitter is to look after the pipes, steam pipes, and connections about engines that operate machinery in factories," etc. His work has been in machine shops largely. He further testified that

when at work on the pipe he was careful to avoid coming in contact with the shaft; that he never knew of any danger from such contact with a rapidly revolving shaft, nor that it " was likely to catch him," but that it might catch a loose garment. Some of his witnesses testified that it was common knowledge that there was danger in allowing clothing to come into contact with a rapidly revolving shaft. He did not know of the existence of the keyway, and when the shaft was revolving rapidly it could not be seen. The evidence tends to show that a smooth revolving shaft would have some tendency to catch hold of and wind around it loose clothing that came in contact with it, while a shaft with a keyway in it, like the one in question, would be much more likely to have that effect and would be more dangerous. Keyways are used for the purpose of attaching wheels or pulleys to shafting, and the evidence discloses that the places not in actual use are usually filled in with babbit metal so as to make a smooth surface.

*Frank Verner Johnson* and *E. Clyde Sherwood* for appellant. The position in which the plaintiff voluntarily placed himself for the purpose of removing the pipe in question was obviously a dangerous one. The danger was known to the plaintiff and the necessity of using care under those circumstances was well known to him. Therefore the risk and danger of having his clothing caught upon the revolving shaft in question was a risk that he voluntarily assumed when he placed himself in that position. (*Connolly* v. *H. W. Co.*, 163 Mass. 156; *Glassheim* v. *N. Y. P. Co.*, 13 Misc. Rep. 174; *Crown* v. *Orr*, 140 N. Y. 450; *Knisley* v. *Pratt*, 148 N. Y. 372; *Buckley* v. *G. P. & R. M. Co.*, 113 N. Y. 540; *White* v. *W. L. Co.*, 131 N. Y. 631; *Hickey* v. *Taaffe*, 105 N. Y. 26; *Horton* v. *V. I. Works*, 13 App. Div. 508; *Shaw* ·v. *Sheldon*, 103 N. Y. 667; *De Young* v. *Irving*, 5 App. Div. 499; *McCue* v. *N. S. M. Co.*, 142 N. Y. 106; *Ogley* v. *Miles*, 139 N. Y. 458.) The court erred in refusing to charge that if the plaintiff voluntarily selected a dangerous place in which to work, there was no duty upon the master to warn

him of its dangers. (*Miller* v. *Grieme*, 53 App. Div. 276; *Thompson* v. *C. Mfg. Co.*, 62 App. Div. 279, 282; *Ekendahl* v. *Hayes*, 10 App. Div. 487; *Flood* v. *W. U. Tel. Co.*, 131 N. Y. 603; *Gibson* v. *E. R. R. Co.*, 63 N. Y. 449, 453, 454; *Lewis* v. *Simpson*, 3 Wash. 641; *Galvin* v. *O. C. R. R. Co.*, 162 Mass. 533; *Erskine* v. *C. V. B. S. Co.*, 71 Fed. Rep. 270; *McCue* v. *N. S. M. Co.*, 142 N. Y. 106; *Hartwig* v. *B. S. S. & L. Co.*, 118 N. Y. 664; *Cahill* v. *Hilton*, 106 N. Y. 512.)

*I. R. Oeland* for respondent. Plaintiff did not assume the risk of being caught by the shafting with the dangerous keyway in it, or at least this was an issue for the jury to pass on. (*Ingerman* v. *Moore*, 90 Cal. 410; *Dorney* v. *O'Neill*, 60 App. Div. 19; *Simone* v. *Kirk*, 173 N. Y. 7; *Eastland* v. *Clarke*, 165 N. Y. 421; *Finn* v. *Cassidy*, 165 N. Y. 584; *Benzing* v. *Steinway & Sons*, 101 N. Y. 552; *Booth* v. *Railway Co.*, 73 N. Y. 40; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Prouke* v. *S. P. Foundry Co.*, 68 Minn. 307; *Walker* v. *N. F. P. Co.*, 99 App. Div. 47.)

WERNER, J.   As the shaft which caused plaintiff's injuries was elevated 14 or 15 feet above the floor of the defendant's factory, and could be reached only by the use of a ladder, the defendant cannot be charged with negligence under the Factory Act in failing to properly guard it. (*Glens Falls P. C. Co.* v. *Travelers' Ins. Co.*, 162 N. Y. 399.)   The only ground upon which the defendant can be held liable, if at all, is that it failed in its duty to properly instruct the plaintiff before he was directed to take down the pipe upon which he was at work when injured.   If the danger to be apprehended by coming in contact with the shaft was as open, obvious and apparent to the plaintiff as it was to the defendant, the latter was under no duty to instruct the former in this regard, for in that event the risk was one which he voluntarily assumed.

The plaintiff was a steamfitter of thirty years' experience, during which time he had been largely employed in machine

shops where revolving shafting was in use. His testimony, taken as a whole, tends to show some knowledge of the dangers attendant upon work in proximity to revolving shafts. It shows that he deemed it necessary to exercise care in avoiding contact with the shaft near which he was at work. The testimony of his witnesses discloses that the danger was a matter of common knowledge. Prior to the accident the plaintiff was a man of at least average mental and physical capacity, who had every opportunity to observe and comprehend the indications of danger in his line of work. In the exercise of ordinary care and prudence he could not have escaped the knowledge that there was danger in permitting his clothes to come in contact with a revolving shaft. The law imposes on the servant " the duty of self protection, and always assumes that this instinct, so deeply rooted in human nature, will guard him against all risks and dangers incident to the employment or arising in the course of the business of which he has knowledge or the means of knowledge. If he voluntarily enters into or continues in the service without objection or complaint, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risk and to waive any claim for damages against the master in case of personal injury to him." (*Crown* v. *Orr*, 140 N. Y. 450; *Williams* v. *D., L. & W. R. R. Co.*, 116 id. 628, 634; *De Forest* v. *Jewett*, 88 id. 264; 1 Labatt on Master & Servant, § 391.)

Upon the motion for a new trial the learned trial judge conceded that if the shaft had been smooth, without the keyway, he would have felt constrained to hold that the plaintiff could not recover. We think he might have gone further and have held that the presence of the keyway did not materially affect the principle here involved. Upon the evidence in the case it must be assumed that the presence of the keyway enhanced the dangerous character of the shaft, and that the plaintiff had no knowledge of the existence of the keyway. But had the defendant specifically warned him of its existence, he would only have been told that there was danger in coming in contact with the shaft, and that, as we have seen, he must

be held to have understood. Where the danger is obvious and great, as in the case of a revolving shaft, it is not necessary to give warning of all the elements which serve to enhance the risk. (*Ford* v. *Mount Tom Sulphite P. Co.*, 172 Mass. 544, 545; *Carey* v. *Boston & Maine R. R.*, 158 Mass. 228, 231.) In *Rooney* v. *Sewall, etc., Cordage Co.* (161 Mass. 153) the plaintiff was injured by having a portion of his clothing caught by a set screw upon a revolving shaft. In denying a recovery in that case, the court (p. 160) said: "While the screw doubtless increased somewhat the danger of being caught by contact with the shaft, belt or pulleys, that danger was so obvious to every one, and was manifestly so great, that even the most ignorant person would endeavor to keep away from those parts of the machinery. The collar and set screw did not project much beyond the pulleys and belt, but were almost in their line of motion. Although the plaintiff says he did not know of the set screw, his testimony shows that he was well aware of the danger from moving pulleys, belt and shaft.  *  *  *  He was more than forty years of age and had had considerable experience. There is nothing in the case to indicate that he needed any warning of the danger from coming in contact with this rapidly revolving machinery, whether he knew of the set screw or not." In *Connelly* v. *Hamilton Woolen Co.* (163 Mass. 156) the facts were almost identical with the facts of the case at bar, and the court there said: " It is urged that there was a keyway in the end of the shaft which made it more likely to catch his clothing than a plain shaft. But the keyway was not a defect, and the shaft was in the same condition when he was hurt as when he began to whitewash the room. The danger of being caught by contact with the shaft, *whether he knew of the keyway or not*, was so great and obvious, that he must have appreciated and taken upon himself the risk of being caught and injured by coming in contact with the shaft. It was not necessary that he should appreciate every particular of the danger." The case of *Johansen* v. *Eastmans Co.* (44 App. Div. 270; affd. without opinion, 168 N. Y. 648) is not in conflict with the

views here expressed, as in that case the plaintiff was concededly an inexperienced man.

For these reasons we think the judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY and HAIGHT, JJ., concur; O'BRIEN, BARTLETT and VANN, JJ., dissent.

Judgment reversed, etc.