HOFFMAN, by guardian *ad litem,* Respondent, vs. RIB LAKE
LUMBER COMPANY, Appellant.

*September 12—September 29, 1908.*

*Master and servant: Injury from uncovered gearing: Questions for
jury: Negligence: Contributory negligence: Special verdict: Evi-
dence: Immaterial error: Excessive damages.*

1. In an action for injuries to a minor employee caused by his com-
   ing in contact with an exposed gearing in defendant's sawmill,
   the evidence is *held* to sustain findings in a special verdict that
   such gearing was so located as to be dangerous to employees in
   the discharge of their duties, that it was not securely guarded
   or fenced, that defendant was guilty of negligence in that re-
   spect, and that plaintiff was not guilty of contributory negli-
   gence.

[2. Whether sec. 1636*j*, Stats. (1898),—providing that gearings so
   situated "shall be securely guarded or fenced,"—imposes upon
   the employer an absolute duty to keep them so guarded, is not
   determined.]

3. A question in the special verdict, "Did the plaintiff in any man-
   ner fail to use ordinary care which proximately caused or con-
   tributed to produce the accident?" which the jury answered
   "No," is *held,* in the light of the charge to the jury, to have
   been understood and answered by them as if it read, "Did the
   plaintiff in any manner fail to use ordinary care, which *failure*
   proximately caused or contributed to produce the accident?"

4. Error in permitting a witness who had worked in five or six dif-
   ferent sawmills to testify that gearings therein in situations
   similar to that of the gearing in question were covered was not
   prejudicial, defendant's duty to cover the gearing in question
   being imposed by statute.

5. An award of $5,000 for injuries to a boy, whose leg was lacerated
   for a distance of fourteen to sixteen inches between the knee
   and hip and a portion of the muscle of his thigh torn out, and
   the use of whose leg was permanently impaired to a great de-
   gree, is *held* not excessive.

APPEAL from a judgment of the circuit court for Wood
county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

*Charles A. Vilas,* for the appellant, cited, among other
authorities, sec. 1636*j*, Stats. (1898); *Powalske v. Cream*

*City B. Co.* 110 Wis. 461, 86 N. W. 153; *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48; *Carey v. C., M. & St. P. R. Co.* 61 Wis. 71, 20 N. W. 648; *Upthegrove v. Jones & A. C. Co.* 118 Wis. 673, 96 N. W. 385; *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599; Vilas, Special Verdicts, § 25.

For the respondent there was a brief by *E. C. Pors & D. D. Conway,* attorneys, and *Geo. L. Williams,* of counsel, and oral argument by *Mr. Conway* and *Mr. Williams.*

Among other references upon the part of the respondent were the following: *Revolinski v. Adams C. Co.* 118 Wis. 324, 95 N. W. 122; *Grant v. Keystone L. Co.* 119 Wis. 229, 96 N. W. 535; *Kelleher v. M. & N. R. Co.* 80 Wis. 584, 50 N. W. 942; *Nadau v. White R. L. Co.* 76 Wis. 120, 43 N. W. 1135; 20 Am. & Eng. Ency. of Law (2d ed.) 147; *Bessex v. C. & N. W. R. Co.* 45 Wis. 477; *Ewen v. C. & N. W. R. Co.* 38 Wis. 613; *Jensen v. Hudson S. Co.* 98 Wis. 73, 73 N. W. 434; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816.

TIMLIN, J. The plaintiff, an infant employee of defendant, recovered in the circuit court for Wood county judgment for $5,000 damages for personal injuries incurred by plaintiff coming in contact with an exposed gearing in the defendant's sawmill. A jury by special verdict found the facts generalized as follows: At the time the plaintiff was injured he was acting within the scope of his ordinary duties as employee and at a place at which he was directed to work by the assistant foreman. The gearing in which plaintiff was caught was so located as to be dangerous to plaintiff and other employees of defendant while performing like services and while in discharge of their ordinary duties as such employees. It was not securely guarded or fenced, and the defendant was in this respect guilty of negligence which was

the proximate cause of the injury to plaintiff.    There was the finding upon contributory negligence of the plaintiff hereinafter referred to, and the damages were fixed at $5,000.

Errors are assigned in denying the defendant's motion for a nonsuit, and later its motion to direct a verdict, and later its motion to order judgment for defendant or grant a new trial.    These points may be considered together so far as they are based upon alleged inadequacy of proof.    Error is assigned in framing the special verdict, in the admission of evidence of a custom in sawmills to guard like gearings, and it is claimed that the damages awarded are excessive.    We take up these points in order.

There was evidence tending to show that extending to the west from near the back or west end of a saw for about seventy feet is a series of short parallel rollers, twenty-one in number and three and one-half feet apart from center to center, and each about that length, so that the whole, with the frame supporting them and with the top of that frame decked or covered beween the rollers, formed a sort of long, low table about three feet seven inches wide, seventy feet long, and twenty-nine inches high.    Rotary motion was communicated to each roller from a horizontal shaft running along the south side of said table near the south end of the rollers at right angles to the rollers and at a height of twenty inches from the mill floor, and connected with each roller by a bevel gearing.    This shaft is driven by a perpendicular shaft coming up through and extending eighteen inches above the mill floor at right angles to the horizontal shaft and engaging with the latter by means of a bevel gearing, which latter is the gearing upon which plaintiff was hurt. This upright driving shaft comes up through the mill floor and engages with the horizontal shaft at some distance west of the saws and at a point in said roller table just east of where a number of floor chains, forming a carrier for edgings and waste material and moving upon drums north-

wardly, cross under said roller table in a direction at right angles to the long extension of said roller table. In the operation of the mill these floor chains sometimes clog with refuse, and the employees were required to remove this accumulated refuse. In doing this it was customary to stand on the roller table and use a pick, but it was also feasible to stand on the mill floor near the angle formed by the roller table extending east and west and the floor chains extending north and south and crossing under the roller table close by where the gearing in question stood.

Immediately before his injury the plaintiff was ordered to this position on the floor for the purpose of removing the refuse clogged in the east side of the floor chains. The gearing in question was covered by a plank twelve inches wide and two inches in thickness lying flat three or four inches over the gearing, extending one and one-half inches further south than the southmost part of the gearing, and the gearing was inadequately covered on the south side at the time of the injury. This uncovered side of the gearing was the side nearest to any person who might be standing on the floor in the angle formed by the roller table and the floor chains, and it was not unusual for the floor chains to become clogged, and employees were expected in that case to remove the accumulated material. From the foregoing the jury might well find that the gearing in question was so located as to be dangerous to employees in the discharge of their duties.

It is next contended that the evidence establishes without dispute that the gearing in question was originally covered on its south side, but that at the time of the injury the board on the south side had become broken or split off, leaving it partially uncovered; that there is no proof that this existed a sufficient length of time before the injury to plaintiff to charge the defendant with negligence. The statute (sec. 1636j, Stats. 1898) provides that gearings so situated

"shall be securely guarded or fenced," and it is quite possible this statute casts the duty upon the employer to keep such gearings securely guarded or fenced.  If such is the law, the evidence in this case leaves no room for doubt that at the time of the accident the gearing in question was not securely guarded or fenced.  But we find it unnecessary to determine this in the instant case because it is clear there is a conflict of evidence, which was resolved by the jury against the defendant, as follows: Several witnesses testified that at the time of the injury to plaintiff and for some time previous there was no board or guard on the south of this gearing. One witness testifies that about a week or a week and a half prior to the accident he had put water and oil on this gearing and it was not then covered, and several witnesses testified that the board on the south side of this roller table, which should have served as a guard or fence to this gearing, did not reach to the west as far as the gearing, but terminated six or eight inches eastwardly of the gearing.  On the other hand, the witness for the defendant testified that this board extended to the west of the gearing six or eight inches, and would have covered the gearing on the south but for the fact that a piece was split off the board.  No one offered to prove when this piece was split off.  But the board was not a movable appliance, and if it was fastened so that the board failed to reach or cover this gearing it might have been so fastened by those who exercised the right and duty to place the board there.    The position of this board was a fact to be ascertained by the jury, and the inference from the fact that it was not shown to have been broken off at the end and that it was fastened up in such position that it did not extend to the gears in question was an inference to be drawn by the jury. These were items of evidence from which the jury could infer, as against the evidence on the part of the defendant, that the gearing in question had never been covered on the south since that board was placed there either in the original

construction or in some subsequent repair of the mill. This makes it unnecessary to determine what would have been the result had it been shown by uncontroverted evidence that the gearing had been covered and continued to be covered until a short time before plaintiff's injury, when it was accidentally or intentionally and without the knowledge of the master uncovered, or what would have been the result in the different case of a plaintiff, in an action for personal injuries sustained by coming in contact with a gearing or appliance required by this statute to be fenced or guarded, not offering any evidence to show for what length of time the appliance had remained unfenced or unguarded.

The question of plaintiff's contributory negligence was for the jury. He was called upon to remove this debris which clogged the floor chains at or about thirty minutes past 5 o'clock in the afternoon of November 8th. The lights were at some distance from this gearing and the gearing was in the shadow of the slightly overhanging top plank. The place at which he stationed himself in order to do this work appears to have been such as to facilitate the doing of the work under the particular conditions of clogging then present. He would naturally be obliged to stoop down. There was a projecting set-screw in the collar of the perpendicular driving shaft just below the crown gear, and in doing his work he might naturally and accidentally, but while in the exercise of due care, have brought his trousers in contact with either the set-screw or the gearing, or both. This whole question was for the jury.

The seventh question of the special verdict is as follows: "Did the plaintiff in any manner fail to use ordinary care which proximately caused or contributed to produce the accident?" The jury answered this question "No." Taking the literal meaning of this question and answer, we have a finding that the plaintiff did use ordinary care of that kind which caused or contributed to cause the accident. This is

nonsense.    It is remarkable that a question in this form
should escape the scrutiny of court and counsel and be sub-
mitted to the jury.    But the court instructed the jury with
reference to this question that if the plaintiff failed in any
respect, however slight, to exercise ordinary care, and such
failure on his part proximately caused or contributed to pro-
duce the accident, in such case they should answer this ques-
tion "Yes."    But if the plaintiff did not in any respect fail
to use ordinary care and thereby cause or contribute to pro-
duce the accident, in such case this question should be an-
swered "No."    This charge informed the jury that of the
sentence forming the question, that clause beginning with the
word "which" should be understood as adverbial rather than
adjective, or, in other words, to modify the word "fail"
rather than the word "care," and that it should be understood
as if it read as follows: "Did the plaintiff in any manner
fail to use ordinary care, which failure proximately caused
or contributed to produce the accident?"    Considering the
question and the instructions explaining it together, it seems
reasonably certain that the jury understood it in this way,
particularly in a case where the question and answer would
be otherwise meaningless.

A witness called for the plaintiff testified that he had
worked in five or six different sawmills, and was asked
whether the gearing and shafting situated similar to the
gearing and shafting in question were in those other mills
covered.    This was objected to as incompetent, and it seems
to us that the objection was well taken.    But, the statute
having imposed upon the defendant the duty of covering the
gearing in question, it was in no wise prejudiced by an at-
tempt, however successful or however feeble or insufficient,
to prove a corresponding common-law duty.

It is contended that the damages awarded are excessive,
and we would have been better satisfied with the result had
the circuit judge reduced this verdict by $1,000 or $2,000.

But the wound was unusually severe and painful and there is some degree of permanent impairment. The wound is described as fourteen to sixteen inches long and five or six inches wide, extending from slightly above the knee toward the hip, lacerating the skin and tearing out portions of the muscle of the thigh. Part of this muscle had to be cut away, skin grafting took place, the wound has broken out again several times since the plaintiff left the hospital, it has left a scar nine or ten inches long and five or six inches wide, has taken away permanently part of the muscles of the thigh, and permanently impaired the use of his leg to a great degree. We find no reversible error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.