MILLER, Respondent, vs. KIMBERLY & CLARK COMPANY,
Appellant.

*November 12—November 27, 1908.*

*Master and servant: Negligence: Personal injuries to servant: Guard-
ing shafting: Statutes: Safe place to work: Proximate cause:
Burden of proof: Contributory negligence: Choice by servant
between dangers: Trial: Questions for jury.*

1. In an action for personal injuries received by a servant it was
conceded that if the master violated sec. 1636*j*, Stats. (1898),
requiring shafting "so located as to be dangerous to employees
in the discharge of their duty" to be "securely guarded and
fenced," it was guilty of negligence rendering it liable in the
action if such negligence was the proximate cause of the in-
jury the servant received without any want of ordinary care
on his part contributing thereto. *Held*, that the legislature, in
the proper execution of its police power, having created the
standard of the master's duty toward servants "in the discharge
of their duty," the court should not interpolate into the statute
the word "ordinary" and thereby test the master's conduct by
a different standard.

2. In such case it appeared from the evidence that, although the
defective shafting was suspended so high above the working
floor as to be beyond the reach of servants in the discharge of
their duties thereon, the servants had other duties, which re-
quired them occasionally, as the master must have known, to
mount and walk upon timbers in the vicinity of the dangerous
and unguarded shafting. *Held*, that the master ought reason-
ably to have apprehended that the condition of the shaft en-
dangered the servants and was within the statute.

3. Where a servant was injured by having his overalls caught in
an imperfect set-collar on a rapidly revolving but unguarded
shaft, in the absence of proof that the set-collar was originally
free from the dangerous defect, it is not error to submit the
case to the jury on the question of negligence and proximate
cause, on the theory that the shaft was to be regarded as in-
cluding the set-collar and had been, from the start, in the con-
dition it was found on the day of the injury.

4. In such case, the defect not being one which affected the efficiency
of the device, nor necessarily developed by use, it was incum-
bent upon the master, in the first instance, to show that the
imperfection did not enter into the original construction, rather

than on the servant to prove there was negligent failure to repair.

5. Where there is conflict in the evidence as to whether there were reasonable inferences rendering any other way chosen quite as dangerous as that which the servant followed, and the way chosen was one pointed out as the proper one by the person to whom the master referred the servant for instructions when he commenced work, the trial court did not err in submitting the question of contributory negligence of the servant to the jury.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This was a controversy between employee and employer as to whether an injury which happened to the former was caused by actionable negligence of the latter.

The injury consisted of the breaking and severely wounding of plaintiff's right leg, rendering amputation above the knee necessary. While he was in the regular course of his employment in the act of stepping over the uncovered journal end of a shaft which was armed with a safety set-collar having the head of the set-screw sunk to a level with the ring, the set-collar being fixed to the shaft so as to run substantially in contact with the inner end of the box, the lower part of his overalls on the right leg caught in a defect in the collar with the result stated. The accident happened August 11, 1906.

The claim of plaintiff was that defendant was actionably negligent in maintaining an uncovered shaft and set-collar over which employees were accustomed to pass in the course of their employment and liable to be injured by coming in contact therewith. Defendant, by answer, put in issue such claim and pleaded contributory negligence.

There was evidence as follows: Plaintiff was accustomed to work about machinery, particularly such as was connected with the avocation of a blacksmith. He was upwards of forty years of age. He had been working for a considerable period

of time prior to the accident as a blacksmith in defendant's blacksmith shop, during which time he had more or less to do with the particular machinery in question. Primarily his duty was to work at his forge, depending upon a blower oper-ated by power transmitted thereto by means of machinery of which that he came in contact with at the time of the injury was a part. He had a helper whose duty was to attend the machinery, but in case of his absence plaintiff had to give attention thereto. He was perfectly familiar with all of the conditions he was subjected to in the course of his employ-ment, except a breach in the set-collar. How long such im-perfection had existed and whether defendant knew thereof prior to the accident, there was no proof. There was a rectangular oblong structure composed of four six-inch square timbers suspended above the floor of the shop. Across the narrow part of this framework, and about midway thereof, there was a shaft which ran in boxes at the ends of the shaft resting on blocks which in turn rested on the frame-work so that the shaft was some thirteen inches above the top of the timber. The south end of the shaft was fitted with the set-collar aforesaid. North of the set-collar there was a trans-mission pulley on the shaft thirty inches in diameter. At the north end of the shaft, set substantially up to the box on that end, there was a drive pulley. It was necessary fre-quently to reach the two boxes for the purpose of oiling them and sometimes to reach the drive belt at the northeast corner of the framework in order to throw such belt from the pulley and stop the machinery. There was other machinery supported on the framework so located in connection with belts that there was a choice of methods of reaching the points mentioned without dangerous interferences. When plaintiff was employed he was referred to his assistant for infor-mation as to the method of reaching and caring for the machinery. He was instructed accordingly. The way the assistant was accustomed to proceed, and the plaintiff as well

by the former's advice, was to ascend by means of a ladder to the top of the framework at the west end, then walk on the timber, assisted, if necessary, by taking hold of a steam pipe suspended high enough to clear the drive pulley and horizontal with the long way of the framework, to the south box, and, as required, to the east corner of the framework, thence north to the point of throwing off the drive belt. In case of the steam pipe being hot so as not to admit of its being grasped by the bare hand, a hook was used with which to engage the pipe, leaving the hand at a safe distance therefrom. The thirty-inch pulley was so near the south timber that by reason of a joist set on the south side of the framework one in passing over the south box to reach the place for throwing off the belt had to go through a passageway between the pulley and the joist about eleven inches wide. On the morning of the day in question, plaintiff, observing the journal on the drive end of the shaft was heating, proceeded in the regular way to the south box with a pail of water with which to cool the "hot box." From his position at the south box he leaned over and poured water on the north box. Finding that he could not seasonably by that means restore the north box to a proper working condition, he started to go south on the timber for the purpose of reaching the point for throwing off the drive belt. In so doing he lifted his right foot to step over the end of the shaft, which was revolving at great speed, whereupon his overalls caught in the imperfection in the set-collar and he was instantly injured as before indicated.

The cause was submitted to the jury with the following result: Plaintiff, while employed in defendant's mill, August 11, 1906, was injured by having his overalls caught by a collar on the shafting that was not guarded. The shafting was so located as to be dangerous to plaintiff in the discharge of his duties. The injury was caused by failure to guard the shafting and collar. There was no want of ordinary care on plaintiff's part, aside from his continuing in defendant's

employment with knowledge of the unguarded shaft and collar, contributing to his injury. Eight thousand five hundred dollars is required to compensate plaintiff for his injury. Judgment was rendered accordingly.

For the appellant there was a brief by *Charles A. Vilas,* attorney, and *C. H. Van Alstine,* of counsel, and oral argument by *Mr. Vilas.*

For the respondent there was a brief by *Eastman & Martineau,* and oral argument by *P. A. Martineau.*

MARSHALL, J.  It is conceded, as the fact is, that if appellant violated sec. 1636*j,* Stats. (1898), requiring shafting "so located as to be dangerous to employees in the discharge of their duty" to be "securely guarded or fenced," then it was guilty of negligence rendering it liable in this action if such negligence was the proximate cause of the injury respondent received without any want of ordinary care on his part contributing thereto.

It is beside the case to argue, as counsel for appellant do in their brief, that the shaft, at the point where the injury was received, was not so located as to be dangerous to appellant's employees "in the discharge of their *ordinary* duties," particular significance being given to the word "ordinary." If the employees, from the standpoint of the master in the exercise of ordinary care, were required in the course of their employment to go about or over the shaft and so come in dangerous proximity thereto or contact therewith, whether the duty was ordinary or exceptional, the situation was within the statute.  The law is cast in general terms.  We cannot interpolate into it the word "ordinary," and test appellant's conduct by a different standard than the legislature, in the proper execution of its police power, created.  Such limitation upon the duty to guard as might be indicated by the word "ordinary," if it were in the statute modifying the word "duty," the legislature manifestly did not intend should exist,

from the fact that the word was industriously, by amend-ment, dropped from the law as it formerly existed; the words "discharge of their duty" being substituted for "engaged in their ordinary duties."

Again, it is beside the case to argue, as counsel do, with numerous supporting authorities, that such a statute as the one in question does not apply where the shafting is sus-pended so high above the working place of the employees as to render it improbable that they will come in dangerous proximity thereto in the discharge of their ordinary duties. Such authorities as *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Cobb v. Welcher,* 75 Hun, 283, 26 N. Y. Supp. 1068; *Dillon v. National C. T. Co.* 181 N. Y. 215, 73 N. E. 978, and the like, upon which counsel rely, at this point, are all very good in their legitimate field. They apply to a situation where the employees would have to so depart from their ordinary movements in performing their work, in order to reach the dangerous machinery, that no one in the exercise of ordinary care would be likely to anticipate such an occurrence; as where a shaft is so located at a consider-able distance above the level reached under any circumstances likely to occur, by employees whose duties are performed while standing or moving about on the floor. The mere fact, in such a case, that an employee might possibly ascend to the shaft by means of a ladder or otherwise, for something of an exceptional nature, does not locate such shaft within the meaning of the statute. As said in the *Powalske Case,* "where a danger is so located that a person must necessarily go out of his ordinary course, or any course which he might be reasonably expected to take, in order to reach it, ordinary care and prudence on the part of another, who is in duty bound to guard him from personal injury within the scope of the risk to be reasonably apprehended therefrom, does not require it to be guarded."

The statute does not require the employer to anticipate

every possible danger to employees; as that one might for some purpose not reasonably to be foreseen go to an uncovered shaft suspended twelve feet or more above the working floor. So, as indicated in the case cited, "if it would not be reasonable to say, on the facts of this case, that the shafting in question was so located that respondent, in the exercise of that care for the safety of its employees which is contemplated by the statute," that is in the exercise of ordinary judgment, under the circumstances, ought to have apprehended that it might cause a personal injury to some one of them, there was no violation of the statutory duty by failure to guard the shaft; the question of fact, of course, being for the jury, if, upon the evidence, different minds might reasonably come to different conclusions in respect thereto.

What has been said, in view of the undisputed fact appearing by the statement, shows that there was evidence to go to the jury as to whether appellant breached its statutory duty or not, which disposes of counsel's first and most significant contention. Although the shaft was supported so far above the working floor as to be beyond the reach of employees in the discharge of their duties thereon, they had others, which required them occasionally, as appellant must have known, to mount and walk upon the suspended timber in the vicinity of the uncovered shaft, armed with the defective collar that was an essential part thereof. As regards such duties the danger was rather greater, on account of the imperfect set-collar, than it would have been had the shaft rested upon supports raising it a foot or two above the floor. Such being the case, there was fair ground for holding appellant ought reasonably to have apprehended that the condition of the shaft endangered the safety of employees, and was within the statute.

The second proposition presented for consideration is that the defect in which respondent's overalls was caught was the proximate cause of the accident, instead of failure to comply with the statutory requirement, and the finding of the jury

on that branch of the case is without support, since the question in regard thereto was directed to the uncovered shaft, instead of the imperfections in the set-collar, which, according to the evidence, did the mischief, and, for aught that appears, may have existed for so short a time that want of ordinary care on the part of appellant could not be predicated thereon, there being no evidence to charge it with actual knowledge thereof. That at first blush seemed difficult to meet. Probably, had it not been for the condition of the set-collar, the accident would not have happened. It may be that, if proof had been produced that the collar was originally free from the dangerous defect, it would have been incumbent on respondent to prove actual or constructive knowledge of such defect for a sufficient length of time before the accident to have enabled appellant to remedy the same. The collar, as indicated, was essentially a part of the shaft. While there was no proof as to how long the defect had existed there was none that it did not characterize the original construction. It was a defect, so far as appears, which did not affect the efficiency of the device or necessarily develop by use. It was incumbent on appellant, in the first instance, to show that the imperfection did not enter into the original construction, rather than on respondent, as the case stood, to prove there was negligent failure to repair. So it was proper to send the case to the jury on the question of negligence and that of proximate cause as well, on the theory that the shaft was to be regarded as including the set-collar and having been, from the start, in the condition it was found on the day of the accident.

The next proposition submitted for consideration is: Was the respondent guilty of contributory negligence, as a matter of law, in starting from his position near the uncovered shaft to go to the point for throwing off the belt, taking a course which required him to step over and come in close proximity to the point of danger, instead of one safely

distant therefrom.    The claim on this branch of the case is
that there was an obviously safe course which respondent·
might have taken, and yet he carelessly chose another and an
unsafe way.    If that were unmistakably borne out by the evi-
dence, it would be difficult to avoid reaching the conclusion
for which counsel for appellant contend.    The infirmity is in
this: There is considerable conflict as to whether there were
not interferences rendering any other way than the one
chosen, quite as dangerous as that, while the evidence, as in-
dicated in the statement, conclusively shows, or tends to
show, that respondent proceeded in the way pointed out to
him as the proper one by the person to whom he was referred
for instructions when he commenced work.    In that situation
it cannot be rightly held that the court erred in submitting
the question of contributory negligence to the jury.    At least
there was room for different minds to reasonably differ in
respect to the matter, which by familiar rules required in-
terference by the jury to properly determine the controversy.
It is not entirely clear but that, since the way respondent
took was not so obviously and imminently dangerous that
one could not reasonably submit himself thereto without ex-
pecting he would probably be injured, and he proceeded as
he and his helper, who had been pointed out to him by the
master as experienced in the matter, had been accustomed to,
the major probabilities, at least, are clearly against contrib-
utory negligence.

At this point counsel refer to such authorities as *Sladky v.
Marinette L. Co.* 107 Wis. 250, 83 N. W. 514, and *Connors
v. Merchants' Mfg. Co.* 184 Mass. 466, 69 N. E. 218, holding,
as a rule, that if an employee omits to pursue the usual and
safe way, voluntarily taking another and unsafe way, which
by the negligence of the master is left open to him, he is guilty
of contributory negligence.    That seems to result from an ex-
cursion outside the case in hand.    The evidence at least tends
to show that the usual, not the unusual, way was chosen, and
is, at the best for appellant, conflicting as to whether it was

not as safe, in view of all the interferences existing, as any, though some other way would have avoided the particular danger which caused the accident.

*By the Court.*—The judgment is affirmed.