## WITTMER v. FAIRHURST et al.

(Supreme Court, Appellate Division, Second Department.　October 12, 1909.)

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—UNGUARDED MACHINERY—NEGLIGENCE—QUESTIONS FOR JURY.

While a servant was attempting to put a pattern on one of a series of shelves extending from the floor to the ceiling of defendant's factory, his clothing was caught by a projecting set screw in a revolving shaft 18 inches below the ceiling. Held, that it could not be said as a matter of law that the factory act (Laws 1897, p. 461, c. 415) did not require the shaft and screw to be guarded, and the question of defendant's negligence was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1017; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

In an action under the employer's liability act (Laws 1902, p. 1748, c. 600) for injuries to a servant, the question of assumption of risk is for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

Appeal from Trial Term.

Action by Annie Wittmer, as administratrix, etc., against William S. Fairhurst and others. From a judgment dismissing the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

The plaintiff's intestate was employed as a pattern maker's helper by the American Air Compressor Works, a copartnership of which the defendant Fairhurst is the survivor. While attempting with the assistance of a fellow workman to put a pattern weighing 150 pounds on a shelf near a revolving shaft, his clothing was caught by an unguarded set screw, and he was killed. The shelves upon which the patterns were placed extended from the floor to the ceiling. The shaft was 18 inches below the ceiling. The end containing the set screw was near and a very little above the end of the shelf upon which the deceased was attempting to place the pattern. The head of the set screw was one inch square, and protruded three-fourths of an inch above the collar.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and MILLER, JJ.

Martin T. Manton, for appellant.

H. C. Allen, for respondents.

MILLER, J. The learned trial judge dismissed the complaint on the authority of Dillon v. National Coal Tar Co., 181 N. Y. 215, 73 N. E. 978, but that case is distinguishable from this in several respects. The plaintiff in that case, a steam fitter of many years experience, was directed by the defendant's foreman to take down a line of pipe which ran along the ceiling of the room above, and from 15 inches to 3 feet away from, the shaft, in which there was a keyway. He knew of the danger of working near a revolving shaft, and it was held that he assumed the risk, although the danger was increased by the keyway which he did not know of. Judge Werner prefaced his opinion in that case with the statement that, as the shaft was 14 or 15 feet above the floor and could be reached only by the use of a ladder, the defendant could not be charged with negligence under the factory act for failing to guard it, for which Glens Falls P. C. Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897, was cited as authority; but in the latter case the Court of Appeals held that the necessity of guarding a set screw projecting from a collar at one end of a revolving shaft, which was approached only for the purposes of oiling the bearings and then by means of a ladder, presented a question of fact. Manifestly, the court did not intend in the Dillon Case to overrule the case which it cited as authority for the proposition announced. What was evidently intended by Judge Werner was that the failure to guard the shaft was not negligence as a matter of law, for that was what the case cited decided. Moreover, in this case the plaintiff's intestate was a mere helper, and was engaged in the ordinary work of the factory. It does not appear how often the men were called upon to put patterns on these shelves or to take them down, but that that was customary and a part of their work was established by the fact that the shelves were there for that purpose.

The master knew that in putting up or taking down the pattern the men might get near the shaft; and it was at least for the jury to say whether in the exercise of ordinary prudence he should not have anticipated that their clothing might get caught by the unguarded set screw. One witness testified to the position of the plaintiff when he was caught. The photograph in evidence makes it difficult to understand precisely how he could have got in the position described, but it is quite evident that the photograph does not plainly show the relative positions of the shelves, the shaft, and the ceiling, at least as described by the witnesses. However, it does appear from the photograph that the shaft and the set screw was near and a little above the shelf on which the pattern was being placed, and it would appear that it was necessary to slide the pattern onto the shelf at the end near the set screw. It seems plain that, under those circumstances, it could not be said as a matter of law that the factory act did not require a shaft and set screw, located as these were, to be guarded.

None of the cases cited by the respondents seem to be in point. In the case of King v. Reid, 124 App. Div. 121, 108 N. Y. Supp. 615, the unguarded flywheel in which the plaintiff's foot was caught had been in operation in the same condition for about 20 years without accident. It was so high above the floor as to preclude liability of a person's foot being caught while walking by it, and the accident was one of those unexpected occurrences not reasonably to have been anticipated. The decision in Kirwan v. American Lithographic Co., 124 App. Div. 180, 108 N. Y. Supp. 805, was put upon the ground that the shaft was guarded so as to protect the workmen in any position in which the master was bound to anticipate that they would be. In Horton v. Vulcan Iron Works Co., 13 App. Div. 508, 43 N. Y. Supp. 699, the plaintiff was not in the defendant's employ. In Foster v. International Paper Co., 71 App. Div. 47, 75 N. Y. Supp. 610, the plaintiff was at work on machinery which was being installed for use. What was said in Shaw v. Union Bag & Paper Co., 76 App. Div. 296, 79 N. Y. Supp. 276, respecting section 81 of the factory act, being intended solely for the protection of those actually operating the unguarded machinery, is much weakened, if not indeed overruled, by later decisions of the same court. Walker v. Newton Falls Paper Co., 99 App. Div. 47, 90 N. Y. Supp. 530; Id., 111 App. Div. 19, 97 N. Y. Supp. 521:

"What evidently was intended [i. e., by the statute] was that those parts of the machinery which were dangerous to the servants whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors." Glens Falls P. C. Co. v. Travelers' Ins. Co., supra.

Here we have an unguarded set screw in a rapidly revolving shaft near where the plaintiff's intestate, a mere helper, had to be to take down or put up patterns, which appears to have been part of his work. The case last above referred to has frequently been cited, but, so far as I can find, has never been questioned as a square authority for the proposition that the question of the master's failure to discharge his duty was at least one of fact for the jury.

The question of assumption of risk, the point upon which the Dillon Case was really decided, could not upon the facts disclosed in this case be disposed of as a question of law, even independently of the employer's liability act. Johansen v. Eastman's Company, 44 App. Div. 271, 60 N. Y. Supp. 708, affirmed 168 N. Y. 648, 61 N. E. 1130. But this action is brought under the employer's liability act, hence the question was for the jury. Clark v. N. Y. C. & H. R. R. R. Co., 191 N. Y. 416, 84 N. E. 397.

The judgment and order should be reversed.

Judgment and order reversed and new trial granted, costs to abide the event. All concur.