PULK, Respondent, vs. CHURCHILL, Appellant.

*May 4—June 1, 1911.*

*Master and servant: Injury from unguarded machinery: Contributory negligence.*

An employee injured, while engaged in his regular work of oiling machinery, by accidentally coming in contact with unguarded pulleys, cannot be held as matter of law to have been guilty of contributory negligence, as distinguished from assumption of the risk, if he did the work in the usual and ordinary way, in the way in which it was expected by the employer and employee to be done, and without omission of the usual precautions or commission of any other act, where the work was not obviously and manifestly dangerous.

APPEAL from a judgment of the circuit court for Pierce county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action to recover for personal injuries received by plaintiff

in defendant's sawmill.    The facts are stated in the opinion.
The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Thomas M. Casey*
and *White & Skogmo,* and oral argument by *Mr. Casey.*

For the respondent there was a brief by *W. H. Frawley &
T. F. Frawley,* and oral argument by *W. H. Frawley.*

TIMLIN, J.    A special verdict was returned finding facts
establishing negligence on the part of the defendant and upon
this the plaintiff had judgment.    The appellant contends for
reversal on the ground that, notwithstanding a finding of the
jury acquitting the plaintiff of contributory negligence, the
evidence affirmatively shows the plaintiff guilty of such neg-
ligence.    It appears that the plaintiff was engaged at his reg-
ular work in oiling the machinery.    There was an edger
table extending east and west having a shaft running cross-
wise of the edger table carrying two circular saws each four-
teen inches in diameter, one fixed near the north end of this
shaft and the other south of this but movable along the shaft.
The front or feed end of this edger table extending east from
these saws was about ten feet long, three feet wide, and at a
height of two and one-half to three feet from the floor.    In
this table, in front of and behind the saws, were feed rolls and
guard rolls, and also back of the saws an open space to allow
the escape of sawdust, and beyond this open space the back
extension of the edger table.    The edger table front and back
extension thereof was along the north side thereof close up to
and in contact with a partition.    The shaft carrying the saws
was extended northwardly into the engine room through this
partition and was driven by a pulley at this end and north of
the partition.    At the south end of this shaft and projecting
about eight inches south of the south line of the edger table
was a pulley which by means of a friction belt drove two
larger and similarly projecting pulleys connected with the

front and rear feed rolls. These pulleys and this belting were not guarded or fenced. An iron frame held the journals of the, feed and guard rolls and extended on either side of the shaft carrying the saws and a foot or more upward from the level of the edger table. This is called the arbor frame. Five or six inches north of the most northerly saw on this shaft was a journal box for the saw shaft which required oiling. The plaintiff, standing near the south end of this shaft in proximity to the pulleys and the belt described, resting his left hand on the arbor frame, attempted to lean over and reach across the edger in the direction of the extension of the saw shaft, a distance of about forty-two inches, for the purpose of oiling the journal last mentioned. He was a man five feet nine or ten inches in height, and he had in his hand an oil can which with its spout was six and one-half inches in length. While thus engaged in oiling, the front part of his buttoned-up mackinaw coat caught on the pulley on the south end of the saw shaft. This jerked him down while he was in the act of oiling and brought his hand in contact with the further saw, causing the injury.

Some of the figures above given are apparently estimates, not accurate measurements. If the table was twenty-four inches from the floor instead of thirty the operation would be much safer, and if the man was five feet ten instead of five feet nine this would make some difference. If he was a long-armed man that also would make some difference. The edger table was brought before the jury and experiments made by the plaintiff leaning over it to reach the oil cup in question. We have not that advantage. There was also evidence tending to show that this bearing could not be reached in any other way. Evidence was offered, it is true, on the part of the defendant that it could have been oiled from the engine room. Evidence was also offered to show that it could have been oiled and had been oiled by getting on top of the rear extension of the edger table and stooping over. This, however, seems to

be quite as dangerous a method as that employed by the plaintiff. There was no way to stop the edger saws for the purpose of oiling this bearing except by shutting down the whole mill. The partition mentioned made it impossible to reach the journal box in question except by leaning across the edger table or getting on top of that table, unless there was a sufficient opening in the partition where the saw shaft projected through it into the engine room. That there was such sufficient opening is denied. Evidence was before the jury to show that the plaintiff on the occasion in question adopted the usual mode of oiling this particular bearing. He had always oiled it in that way. Others, including the defendant, had oiled it in that way. Although there was much evidence to the contrary, there was evidence from which the jury might have found that the manner in which the plaintiff performed the duty of oiling this bearing was the usual and ordinary manner and that authorized by the defendant by example, and that it was the only practicable mode considering the surroundings above described, and not so obviously and manifestly dangerous that an ordinarily careful person would not attempt it. The plaintiff's coat appears to have been buttoned up and its contact with the unguarded pulleys purely accidental. There was no doubt assumption of risk by him, but the statute, sec. 1636$jj$ (Laws of 1905, ch. 303), has taken away this defense. It has not taken away the defense of contributory negligence, but negligence cannot be predicated of an act done in the usual and ordinary way, in the way in which it was expected by the employer and employee to be done, and without omission of the usual precautions or commission of some act other than the act of doing work in the usual and ordinary way, where the work is not obviously and manifestly dangerous to the employee. We therefore cannot reverse the judgment on the ground claimed by appellant. *Monaghan v. Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066; *Miller v. Kimberly & C. Co.* 137 Wis.

138, 118 N. W. 536; *Klotz v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770; *Hoffman v. Rib Lake L. Co.* 136 Wis. 388, 117 N. W. 789.

*By the Court.*—The judgment of the circuit court is affirmed.