JENSEN, Appellant, vs. THE HUDSON SAWMILL COMPANY, Respondent.

*November 20 — December 10, 1897.*

*Master and servant: Personal injuries: Negligence: Contributory negligence: Pleading.*

1. In an action for personal injuries received by an employee in a sawmill whose arm had been caught in an unguarded endless chain on a conveyor, and drawn between the chain and the sprockets, crushing it and otherwise injuring him, a complaint alleging explicitly that the machine was dangerous, that it could have been guarded and protected with little expense so as to obviate the danger; that similar machines in other mills in that locality were so guarded; and that the mill in the neighborhood of the conveyor was not properly lighted so as to enable employees working there to avoid danger while in the discharge of their duties, is *held* sufficient to charge the defendant with actionable negligence which was the proximate cause of the injury.

2. A complaint in such a case alleging, among other things, that the plaintiff was a common laborer, inexperienced and unfamiliar with sawmill machinery and the dangers incident thereto; that the defendant improperly placed him at work in close proximity to the machine mentioned, without informing him of the dangers arising from the unguarded condition of the chain and sprockets of the conveyor; that plaintiff informed defendant, May 22, 1893, that his employment under such circumstances was dangerous, and that he would quit unless the defendant furnished him better light and guarded said chain and sprockets; that the defendant promised to comply with such demands; and that the plaintiff, relying thereon, remained in the employment, and received the injuries of which he complained on the 24th of the same month,— does not, as matter of law, show either contributory negligence or assumption by plaintiff of the risk of being injured in his employment in the manner stated.

APPEAL from an order of the circuit court for St. Croix county: W. F. BAILEY, Judge. *Reversed.*

This is an appeal from an order of the circuit court sustaining a demurrer to the plaintiff's amended complaint, on

Jensen vs. The Hudson Sawmill Co.

the ground that the same did not state facts sufficient to constitute a cause of action.    The complaint alleged, in substance, the following facts:

The defendant was the owner and engaged in operating a sawmill.    Situated about in the center of the mill and a part of its machinery, was, at the time of the happening of the injuries complained of, a certain machine, called a conveyor, used for the purpose of carrying and conveying edgings, sawdust, chips, and refuse material from the mill to the engine room, where the same were burned as fuel.    The conveyor was about sixty feet long, and at the easterly end raised about the height of nine feet above the floor of the mill, and at the westerly end to about the height of eighteen feet above the floor.    Said conveyor was in the form of a huge trough, about twelve inches deep and fourteen inches wide; and running in said trough and over sprockets at each end was an endless chain, constructed of three-quarter inch iron, each of the links of which was flattened on the top, so that it ran along and scraped over the bottom of the trough when the said chain and conveyor were in motion, and the part of the chain running over the top of the sprockets projected to the height of three inches over the rim and top of the trough.    The motive power of the mill was steam, and all of the machinery, and particularly the conveyor and chain, revolved and moved with great rapidity, the sprocket wheel making forty revolutions per minute.    On the northerly side of said conveyor, and about three feet east of the westerly end thereof, was a spout or slide leading from the edger in the mill to and over said chain and conveyor, carrying the edgings and refuse from said edger over, into, and upon the conveyor and chain.    On the southerly and lower end of said spout, leading from said edger, were five iron bars, which extended in a northerly and southerly direction from and parallel with said last-mentioned spout, which extended over said conveyor, preventing the larger

pieces of said refuse from dropping into and upon the said conveyor and chain and clogging and obstructing the same. On the southerly side of said conveyor, immediately adjacent to and touching the west end thereof, was a certain post, about twelve inches square, for the purpose of supporting the second floor of the mill, and, at the place where the said conveyor was located, it was at all times so dark that it was almost impossible to see the chain and sprockets of the conveyor, and the darkness increased the dangers of the plaintiff's employment, to the knowledge of the defendant. It was the duty of the defendant to provide good, safe machinery and apparatus, and a reasonably safe place in which the plaintiff was to perform said work, and to have and to keep such chain and sprockets, and particularly the lower and westerly end of said chain, and the westerly or lower one of said sprockets, covered and protected, so that the same would not be dangerous to the employees and others in the vicinity thereof. It was so made the duty of the defendant by the laws of the state, but it had, for a long time prior to the happening of the injury complained of, unlawfully, recklessly, and negligently left and permitted the same to be uncovered and unprotected, without any means or devices whatever to prevent its employees and others in the vicinity thereof getting caught in the same and being drawn therein and thereby injured; and said machinery and conveyor were, at the time of the plaintiff's injury, dangerous in the extreme, by reason of the facts herein alleged.

In the spring of 1891 the plaintiff was in the employ of the defendant, as a common laborer in the yard of its mill, on what is known as the "dump." Afterwards, and on May 20, 1893, he was required by the defendant to work and be in the mill, in, around, and between the machinery therein, and to keep the floor of the mill clean and free from sawdust and refuse, and was ordered by the said defendant to work around the said conveyor, and to carry edgings,

bark, and other refuse thereto, and to the lower end thereof, and put the same upon and in said conveyor, so that it might and would be carried. out of said mill. Afterwards, about May 22, 1893, while working as thus directed, the plaintiff became apprehensive that he was liable to or might be injured because the said conveyor was uncovered and unprotected over and around the said chain and sprocket, and because of the almost total darkness therein, and from the fact that no guard or protection existed to prevent his being caught and injured, and, although the plaintiff at that time did not know and apprehend the precise danger and risk incident to such employment, still he thereupon, a few days prior to the happening of his injuries, told the defendant that he considered such place dangerous, and he would then and there quit unless the defendant would properly cover and protect said chain, sprocket, and conveyor, and more particularly the westerly end thereof, and furnish better light, so that the plaintiff could see the machinery of the said mill, and could work around and between the machinery thereof, and especially around the conveyor herein described, without danger of injury; and the defendant thereupon promised to have the same covered, guarded, and protected, so as to prevent the plaintiff being caught and injured thereby, and to provide better light therein, and directed the plaintiff to continue at work in and around said conveyor and machinery. Relying upon said promise, the plaintiff continued in such employment; but the defendant, not regarding its duty, conducted itself so negligently that it failed to provide a good, safe place in which the plaintiff was to perform his work, in not having the mill properly lighted, and particularly in not providing sufficient light so that the plaintiff could see the chain and sprockets of said conveyor, and in not covering, fencing, and protecting the said chain and sprockets as aforesaid. By reason of such negligence in the premises, and while said defective machine was in use and

operation, and while the plaintiff was engaged as directed and in the strict line of his duty, and under the direction of the said defendant, without fault or negligence on his part, and wholly by reason of the said negligence of the defendant, on the 24th of May, 1893, and while his attention was momentarily attracted elsewhere, his clothes were caught by the said projecting, unguarded chain of said conveyor, and he was drawn therein, and his right arm was drawn under and between the chain and sprockets of said conveyor at the westerly end thereof, and was crushed, torn, and mangled to such an extent that it became necessary to have the same amputated between the wrist and elbow; and his left arm was crushed, torn, lacerated, and bruised, and the tendons and muscles thereof strained and injured, to such an extent that said left arm was crippled and rendered almost useless; and he was also otherwised injured in his head, neck, face, chest, back, spine, and spinal cord, internally and otherwise.

The plaintiff further alleged that he (plaintiff) was a common laborer, wholly unfamiliar with sawmill machinery and the dangers incident thereto and connected therewith, and, prior to the happening of the injury, had no knowledge or notice of the dangerous condition of said conveyor, as the defendant well knew; that his injuries are permanent in their nature, and were caused by the said negligent and careless acts and omissions of the defendant herein, and by taking the plaintiff, a common laborer and an inexperienced man, without knowledge of machinery and of the risks and dangers of the employment, and placing him in and around such unfenced and unprotected and uncovered sprockets and chain of said conveyor, without, as is the fact, informing him of the dangers thereof and incident thereto, and in leaving the said sprockets and chain of said conveyor unprotected and unguarded, and in permitting the said chain to project above the rim of the trough in which the same so

ran, and in not providing sufficient light so that the plaintiff could see the machinery of the mill.

It was further alleged that there were various devices in existence and in general use at sawmills and factories for the purpose of guarding and covering such chains and sprockets, and that such means and devices could be and were, in such mills other than the one in question, used and employed at little or no expense, and without hindering or affecting the usefulness or operation of the machinery, as the defendant well knew; that, previous to his injury, plaintiff was an able-bodied man, capable of earning, and did earn, large wages; that his injuries so received had rendered him a cripple for life, and incapacitated him for doing any work or labor whatsoever; that he had been compelled to expend large sums of money for medical and surgical aid and attendance, and would be compelled to make large payments for like purposes in the future; that he had been compelled to submit to great bodily and mental pain and anguish, and would be compelled so to suffer for the rest of his life. Judgment was demanded for the sum of $20,000, for the wrong and injuries aforesaid.

The circuit court made an order sustaining the demurrer and directing a dismissal of the complaint, from which the plaintiff appealed.

For the appellant there was a brief by *T. F. Frawley* and *W. C. Donovan*, and oral argument by *Mr. Donovan*.

For the respondent there was a brief by *John W. Bashford*, attorney, and *Bashford, Aylward & Spensley*, of counsel, and oral argument by *R. M. Bashford* and *John W. Bashford*.

PINNEY, J.   1. Upon the subject of the negligence of the defendant, the averments of the complaint are quite explicit as to the dangerous character of the conveyor as it was constructed and operated, and show the absence of the care and

precaution which ordinarily prudent persons are alleged to observe in respect to similar affairs under like circumstances. It is alleged that the conveyor could have been, as is usual in other mills in that part of the country, guarded and protected with little expense, so that the danger of working around and about the same would have been obviated. There are averments showing that this machine, as constructed and operated, was not reasonably safe. The prominent element of danger relied on is the want of proper light in the mill to enable employees to see the chain and various parts of the conveyor while revolving or moving with rapidity. It does not appear that the danger of working in the mill and around the conveyor was imminent, but the inference is quite clear that, if the mill was properly lighted, the plaintiff and other operatives might, in the discharge of their duties, avoid danger of injury. It was the duty of the defendant to use reasonable care and precaution to prevent injury to the plaintiff and other operatives from the causes mentioned in the complaint. As was said by Mr. Justice NEWMAN in *Guinard v. Knapp-Stout & Co. Company*, 95 Wis. 486: "No doubt, the test of negligence is the presence or absence of that degree of care which ordinarily prudent persons are accustomed to observe about the same or similar affairs in the same or similar circumstances." As there said: "The employer may carry on his business in such places as he pleases, and with such machinery and appliances as he may choose, provided only he does not violate the positive law of the land, nor expose his employee to unknown danger." "The employee is deemed to accept the place furnished to work, with the risk of such dangers as he knows or can discover by the exercise of ordinary attention." Failure to properly light the place in a sawmill where the employees are required to work around or in close proximity to strong and dangerous machinery, by which they are liable to suffer sudden and unexpected injury for want of proper light to see the same, is

relied on as negligence on the part of the employer. If evidence should be given at the trial tending to prove the acts or omissions relied on as negligent, the case would have to go to the jury, that they might draw the proper inferences or conclusions as to whether negligence on the part of the defendant had been established. We think that the complaint does sufficiently charge the defendant with actionable negligence which was the proximate cause of the plaintiff's injury. It does not appear that the conduct of the defendant came up to the standard of persons generally in the same business, under the same or like circumstances, but this will be proper matter of proof at the trial.

2. It is contended on the part of the defendant that the allegations of the complaint show that the plaintiff assumed the risk of injury in his employment from the causes alleged in the complaint, and was guilty of contributory negligence tending to produce the injury of which he complains. It will be convenient to consider these questions together, as they are so nearly related. Indeed, assumption of unusual risk is considered a species of contributory negligence. Whittaker's Smith, Neg. 398; *Nadau v. White River Lumber Co.* 76 Wis. 131; *Hazen v. West Superior Lumber Co.* 91 Wis. 213; *Darcey v. Farmers' Lumber Co.* 87 Wis. 249; *Peterson v. Sherry Lumber Co.* 90 Wis. 93. Where a defect or danger is open and obvious to a person of ordinary intelligence and judgment, although it exists in consequence of the negligence or default of the employer, knowledge of it on the part of an employee of mature years will be presumed; and, although the employer may be said to have been guilty of negligence in keeping his premises or machinery in a dangerous condition, the employee is also guilty of negligence in accepting the service and continuing in it; and this becomes equivalent to contributory negligence on his part, and will prevent a recovery. *Hazen v. West Superior Lumber Co.* 91 Wis. 213. The rule as to the effect

of the promise alleged to have been made to the plaintiff, and which is said to have induced him to remain in the defendant's employment, seems to be that where there is an objection by an employee against continuing in the employment of the master because of some special risk attending it, and a promise by the master to remove the danger within a reasonable time, a continuation of such employment in consideration of such promise will relieve the employee of the charge of contributory negligence if injured because of such danger within such time, unless the risk is so obvious and immediate that serious injury may probably result from a continuance of the work. "If the services cannot be continued without constant and immediate danger, and the danger and its character are fully known to the employee, he assumes the risk of the employment. . . . If the danger is not great and constant, then such promise may well be deemed to relieve him; but if it is great and immediate, and of such a nature that a prudent man would not ordinarily incur it, such a promise does not nullify or excuse the contributory negligence." *Erdman v. Illinois Steel Co.* 95 Wis. 14, and cases cited.

It is alleged in the complaint that the plaintiff was a common laborer and inexperienced and unfamiliar with sawmill machinery and the dangers incident thereto and connected therewith; and it is charged that the defendant improperly placed him at work in close proximity to the machinery mentioned in the complaint, without informing him of the dangers thereof by reason of the unguarded condition of the chain and sprockets of the conveyor; that he concluded that his employment under such circumstances was dangerous, and that he would quit unless the defendant would furnish better light and properly cover and protect said chain and sprockets, and he so informed the defendant May 22, 1893; that the defendant promised to furnish better light, and to guard and protect said chain and sprockets, and, relying thereon,

he remained in the said employment, and received the injuries of which he complains, as stated, on the 24th of the same month. In *Jones v. Florence Mining Co.* 66 Wis. 271, it is laid down as "now clearly settled that if a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them and do his work safely, with proper care on his part." *McDougall v. Ashland Sulphite-Fibre Co.* 97 Wis. 382, and cases cited. As was said in *Rummell v. Dilworth,* 111 Pa. St. 350: "In view of the facts alleged, actual experiment only could disclose to the plaintiff the degree of peril he assumed. The machinery was open to the view of the plaintiff, but whether he was liable to be drawn into the machinery depended upon matters with which he was totally unacquainted, and which he could learn only by actual experiment. The plaintiff cannot be supposed or assumed to have accepted in advance a peril which he could not estimate, and the extent of which, for lack of experience, he could not have known. Where there is any doubt whether the employee was acquainted, or ought to have been made acquainted, with the risk, the determination of the question is necessarily for the jury." If the master has promised to repair a defect within a reasonable time, the fact that the servant subsequently remained in his employment, in the well-grounded belief that the dangers would be obviated, does not necessarily, as a matter of law, make him guilty of contributory negligence. It is a question for the jury whether, in relying upon such promise, and continuing in the employment after he knew

of its insufficient condition, he was in the exercise of due
care.   The burden of proof in such a case is upon the com-
pany to show contributory negligence.   *Hough v. Railway
Co.* 100 U. S. 215.   It is a question of fact for the jury to
determine whether the defect is so serious or the dangers
so great that a prudent person would not continue in the
performance of the required work.   *Chicago D. F. & F. Co.
v. Van Dam,* 149 Ill. 337.

For the reasons stated, we do not think that the allega-
tions of the complaint show, as a matter of law, either that
the plaintiff was guilty of contributory negligence, or that
he assumed the risk of being injured in his employment in
the manner stated in the complaint.   The proof that will
necessarily be admissible in support of the allegations of the
complaint will be of the particular facts and circumstances
of the case, from which it will be the duty of the jury to
draw proper inferences as to these questions, so that ulti-
mately the truth of the matter alleged in the complaint will
be for the consideration and determination of the jury; and
it is impossible to properly pronounce against the plaintiff,
as a matter of law, in advance of the trial.   It follows from
these views that the order of the circuit court sustaining the
demurrer is erroneous and must be reversed.

*By the Court.*— The order of the circuit court is reversed,
and the cause remanded for further proceedings.