BLAHNIK, Administratrix, Appellant, vs. CENTRAL COAL
COMPANY, Respondent.

*February 22—March 15, 1910.*

*Master and servant: Death: Unguarded gearing: Contributory negligence.*

An oiler, familiar with the whole situation, who knew the danger
of oiling the hoisting machinery in question when it was in
operation if the guard railing was not in place, and had been
forbidden to go, under such circumstances, through a narrow
passage between revolving drums and gears, and who could
easily have replaced the guard (which had been temporarily
removed) or could have had the machinery stopped for oiling,
but neglected to take either of such precautions and was caught
by the gears and killed, was as a matter of law guilty of con-
tributory negligence which was the proximate cause of his
death.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

Action to recover compensation for the death of plaintiff's
intestate, alleged to have been caused by actionable negligence
of defendant.

Plaintiff's claim as stated in the complaint is, that the de-
ceased was killed, while with due care in the performance of
his duty as an employee of the defendant, endeavoring to oil
the bearings of a machine composed of revolving drums and
gears, by being caught and dragged into the gears and be-
tween the drums, the cause thereof being, first, that the ma-
chinery was unsafe, in that the drums and gears were un-
guarded, in which condition when in motion they were dan-
gerous to the deceased in the ordinary performance of his
duty; second, that his working place was unsafe because of an
insufficiency of space between the sides of the building and
its projections on one side and the revolving drums and gears
on the other; third, that the working place was unsafe, in
that the floor where deceased had to work, was so incumbered

with machinery that it was difficult for him to obtain a safe and solid resting place for his feet.

The contrivance into which the deceased was drawn is described in the complaint, as follows: Two rapidly revolving and unguarded drums and unguarded gears, located on the floor of the room so as to be dangerous to employees. There were two drums, each over three feet in diameter, the two being placed horizontally on the floor parallel to each other with a narrow space between them. Close to the end of each drum was a cogwheel of about the diameter of the drum, each engaging a small cogwheel at the side by which power was transferred to the large wheels and companion drums. All revolved rapidly when the machinery was working. The operation of oiling required the oiler to go, at times, when the machinery was working, in such close proximity thereto as to render probable his clothing being caught or his slipping and falling against the gears, in the absence of any guard or protection in that regard, which guard could easily have been provided but, through defendant's negligence, was not.

The answer put in issue the allegations of negligence on defendant's part, and alleged that the machinery could readily have been oiled while in motion and that it was in fact properly guarded, and further that the deceased was injured through his own contributory negligence.

The evidence was to the effect that the machinery in which the deceased was injured was located on the second floor of a tower three stories high, containing all the machinery for taking coal from vessels and depositing the same in cars. On the first floor was the motive power; on the second the hoisting device and connections; on the third hoppers to receive the coal carried to that point by the contrivance described, the engineer's room, and operating levers by the manipulation of which by the hands of the engineer the machinery was controlled. The second and third floors were reached by stairways. That between the first and second floor had its

landing place near the east wall; that between the second and third floor was in the northeast corner. The deceased met his death on the second floor. It was about twenty feet square. From the middle of the east wall a steel hopper three feet wide parallel with such wall projected into the room some five feet. West of the hopper and occupying a large part of the otherwise clear space, was the machinery in which the accident occurred. The two winding drums five feet in diameter occupied the central portion of the collection of drums and gears. On the east end of each drum and of equal diameter with it there was a large gear which was turned by power being transmitted thereto by a nine-inch pinion located between them. One drum was dropped a few inches below the floor and the other was about a foot higher. From out to out of each drum it was about nine feet. The gear end of the shaft was supported by a box on a floor pier about two feet from the floor, the inside of the box being distant from the gear sufficient for a slight sleeve adjustment. As a person stood facing the outer ends of the large gears the cogs on the right-hand side of the left gear, as indicated, were only a short distance from those on the left side of the right-hand gear. The drum pinion was adjacent to the hopper. The space between the hopper and the outside of the gears was thirty-nine inches. The distance from the projecting portion of the supporting piers to the hopper was about nine inches. The passageway between the piers and the hopper for the width of the latter was as indicated. There were some other interferences so that the oiler, while doing a part of his work, was required to stand in an angle formed by the gear, drum, and supports on the west and the supporting bed for the machinery on the north with the southeast corner of the room at his back, the stairway at his left and the hopper at his right. On the flange end of the supporting bed and piers there were projecting bolt heads. There were other interferences at the floor sufficient to cause one to stumble in proceeding by or

over them unless he had in mind to avoid having his feet col-
lide therewith.   Ordinarily a proper railing was maintained
on the side of the passageway towards the outer ends of the
gears which, when in place, was a reasonable provision against
danger of an employee from that direction getting injured by
the machinery, while in performance of his duty as oiler.
The railing was not in place on the day of the accident.   It
had been removed and placed back against the wall to permit
of doing some repair work.   The guard could, in a few mo-
ments, have been readily put in place.   It was so designed as
to permit of being easily removed and replaced as occasion
required.   The deceased had been in the employ of the de-
fendant a sufficient length of time to know of the entire situ-
ation aforesaid, and did know it.   It was one of his duties to
assist in repairing the machinery when requested to do so.
He was familiar with the performance of that part of his
duties.   He, as well as the engineer and foreman, was re-
quired to keep the guard aforesaid in place when repair work
did not otherwise require.   It was customary when making
repairs to operate the machinery a short time without the
guard being in place, in order to enable the head repairer to
conveniently make required adjustments.   Ordinarily it was
the duty of the deceased, who was head oiler, to oil the ma-
chinery when it was in operation.   He was in the habit of
doing that with the guard rails not in place, during the ad-
justment period aforesaid, though it was within his compe-
tency to have the machinery stopped to allow him to safely do
his work, if he desired.   In the course of his duties he was
required to go through the narrow passageway several times
a day, but was under instructions not to do so when the ma-
chinery was in motion and the guard not in place.   The acci-
dent occurred about 2 o'clock p. m.   No one was present.
There was no direct evidence to show how it happened.   The
machinery had been out of use for some two days prior to one
hour before the accident to permit of repairs being done, de-

ceased helping in that regard. The machinery was being run for the purpose of making needed adjustments after the repair work, when the accident happened. There was no direct evidence of why deceased was in dangerous proximity to the machinery at the time he was injured. He went onto the second floor a few minutes before he was found there dead. The engineer being admonished by the noise of the machinery that some adjustment and oiling was needed, went from his station on the third floor to the second floor and found the deceased lying on his back, south of the narrow passageway, between the hopper and the machinery, with his head toward the south and feet toward the north. The back part of his head had been crushed off. Portions of the head lay under the north large gear, with an oil can near by. The deceased was a party to the guard rail being off prior to the time of the accident. He could have replaced it, had he seen fit, before attempting to oil the machinery, if that was what he was attempting to do when injured, or requested to have the machinery stopped.

[At the close of the evidence the trial court directed a verdict for the defendant, and from the judgment entered thereon the plaintiff appeals.]

For the appellant there were briefs by *Kaftan & Reynolds,* attorneys, and *V. I. Minahan,* of counsel, and oral argument by *Mr. R. A. Kaftan* and *Mr. Minahan.*

For the respondent there was a brief by *Wigman, Martin & Martin,* and oral argument by *J. F. Martin.*

MARSHALL, J. The judgment must be affirmed. It seems useless to discuss the evidence. The situation at the time the deceased met his death is sufficiently shown by the statement. It was dangerous to oil the machinery when in operation with the guard not in place. No one knew that better than the deceased. A sufficient guard was provided. The deceased could have had the machinery stopped while he

·supplied the needed oil, or he could easily have replaced the .guard before attempting to do his work. He knew it was dangerous to go through the narrow passageway while the machinery was in motion and the guard not in place. He had been prohibited from doing so. He either attempted to do that or to oil the machinery, neglecting to have the same stopped for that purpose, or to replace the guard, and so in ·some way met his death when it would not otherwise have ·occurred. So in any way the situation can reasonably be viewed his contributory negligence was the proximate cause ·of his death.

*By the Court.*—The judgment is affirmed.