West, Administrator, Respondent, vs. Bayfield Mill Company, Appellant.

*October 27—December 6, 1910.*

*Master and servant: Death caused by unguarded gearing: Assumption of risk: Contributory negligence: Duty of master: Statute construed: Instructions to jury: Prejudicial errors: Evidence.*

1. In an action for death of an employee who was caught in a bevel gearing located under and operating a live-roller table in defendant's sawmill, the jury was warranted by the evidence in finding that the gearing had not been safely guarded because of the manner in which a short hemlock board (which constituted the guard) was put in place and fastened to the table, considered in connection with the forces which tended to displace such board while the mill was in operation.

2. Under sec. 1636*jj*, Stats. (Supp. 1906: Laws of 1905, ch. 303), an employee does not assume the risk of an unguarded gearing by continuing to work around the same after knowing of its existence; and this rule applies to a case where the guard is temporarily displaced without the master's knowledge, if such removal was due to its being insecurely fastened in the first instance.

3. Contributory negligence is a matter of defense and the burden is upon the defendant to establish it by affirmative evidence unless it is shown by the plaintiff's proofs.

4. Although the board constituting the guard for the gearing had, to the knowledge of the deceased, become displaced about half an hour before the accident, it not appearing that he had appliances at hand to fasten it back, and there being evidence tending to show that he was occupied with his work all the time and had no authority to shut down the mill, which might have resulted from his leaving his place, he was not guilty of contributory negligence as a matter of law in failing to replace the guard or to notify the master that it was off, but the question was for the jury. *Blahnik v. Central C. Co.* 142 Wis. 167, distinguished.

5. Sec. 1636*j*, Stats. (1898), requiring that dangerous shafting and gearing be securely guarded, does not impose on the employer the duty to insure an employee's safety against all possibility of injury, as is implied in an instruction that employees "should be secure against danger of violence while performing their work." Timlin, Siebecker, and Kerwin, JJ., dissent.

6. The employer discharges his duty under the statute when (1) he uses ordinary care and prudence in determining whether the gearing or shafting is so situated as to be dangerous to employees while performing their duties, and decides the question as ordinarily careful and prudent employers under like circumstances, in the honest exercise of their judgment, would decide it; and (2) when, the shafting or gearing being such as is required to be guarded, he provides as effective a guard as ordinarily careful and prudent employers, under like circumstances, would and do deem it their duty to furnish. TIMLIN, SIEBECKER, and KERWIN, JJ., dissent.

7. The one exception to the last proposition is that if the guard as ordinarily furnished be obviously dangerous it will not be deemed sufficient.

8. Unless the employer has reasonable ground to believe that an accident might happen to the employee while performing his work, he is not at fault in failing to provide a guard; and in providing one where required the measure of his duty is ordinary care. TIMLIN, SIEBECKER, and KERWIN, JJ., dissent.

9. Where the facts are such that the jury might have found either way upon the question whether gearing was securely guarded within the meaning of the statute, an instruction which in effect makes the employer an insurer of the safety of his employees is clearly prejudicial and ground for reversal, even under ch. 192, Laws of 1909 (sec. 3072m, Stats.).

10. There being no claim in this case that it was not feasible to guard the gearing in question, evidence that a sheet-iron covering might have been used instead of the hemlock board, and that such guard could have been fastened on the roller bed and would not have interfered with the use of the machine, was incompetent. [Whether the admission of such evidence was a material error, not decided.]

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action is brought by plaintiff as administrator of the estate of Philip La Pointe, deceased, to recover damages for the death of said La Pointe, resulting from injuries received by coming in contact with an exposed gearing in defendant's sawmill.

On June 10, 1908, La Pointe was an employee of the defendant, and in the performance of his duties was required to

work alongside of a live-roller table, the purpose of which was to carry lumber, slabs, etc., from a bandsaw situated at one end thereof. The table consisted of a series of rollers about three feet apart, between each of which there was a decking of boards running lengthwise, set in a wooden frame of four-by-twelve timbers, the table being about twenty feet long, two and a half feet high, and three and a half feet wide. At the side of the table and just below the top there was a shaft extending the entire length thereof, which shaft connected with the rollers by means of bevel gearings. This lateral shaft was driven by a bevel gearing at the top of a perpendicular shaft extending up through the mill floor, such gearing being about eight inches in diameter. The deceased was caught in the gearing at the intersection of the two shafts. The mechanism here involved is practically the same as that described in the opinion of the court in *Hoffman v. Rib Lake L. Co.* 136 Wis. 388, 117 N. W. 789. It appears from the testimony that up to a short time previous to the accident the gearing upon which plaintiff was injured was covered by a six-inch hemlock board, three feet long, nailed to the edge of the roller table and possibly to two-by-fours at either end of such board. The jury found that negligence on the part of the defendant was the proximate cause of the injury and that the deceased was not guilty of any want of ordinary care, and assessed plaintiff's damages at $4,750. From a judgment rendered upon such verdict defendant appeals.

For the appellant there was a brief by *Thomas M. Kearney,* of counsel, and *Lamoreux, Shea & Cate,* attorneys, and oral argument by *Mr. Kearney* and *Mr. Burdette F. Williams.*

For the respondent there was a brief by *H. W. Dietrich,* attorney, and *John Jenswold, Jr.,* of counsel, and oral argument by *Mr. Dietrich.*

BARNES, J.    The grounds for reversal urged in this case are that the court erred (1) in refusing to hold that the de-

fendant was not negligent; (2) in not holding that the plaintiff was guilty of contributory negligence; (3) in charging the jury in various particulars; and (4) in admitting incompetent evidence prejudicial to the defendant.

1. In reference to the first error, it is said that the gearing was safely guarded within the meaning of sec. 1636*j*, Stats. (1898), and the fact that the guard had become displaced and so remained for half an hour on the day of the injury, and had also become displaced for a few minutes the day before, was not sufficient to charge the defendant with knowledge of any infirmity therein. There is no claim that the defendant had any actual knowledge that the guard was off on either occasion. We do not find any evidence in the case tending to show that the guard was not a safe appliance, if we assume that it had been properly and sufficiently fastened, and we do not think that the jury would be warranted, on the facts shown, in finding that the defendant was chargeable with knowledge of the fact that the guard was not in place on the occasions referred to. We do think that the jury might have found from the evidence that the gearing was not safely guarded in the first instance, because of the manner in which the guard was put in place. The guard was an inch board, the upper edge of which was nailed to another inch board that formed part of the table, and the upper edge of the guard board came up flush with and really formed part of the top of the table. The guard board was not fastened at the bottom, and there was evidence from which the jury might have found that the ends were not fastened, although there was considerable evidence to the effect that it was nailed at the ends to the two-by-four boards upon which the top of the table rested. The evidence further tended to show that employees in the performance of their work had occasion to lean against the guard in such a manner as to spring the lower portion of it inward, and that slabs, cants, and other material passing down the table came in contact with the upper edge of the guard board in

such a manner as to have a tendency to unloose it from the table proper. The guard had become unloosed the day before the injury occurred. We conclude that a jury question was presented by the evidence, and that the jury was warranted in finding that the gearing was not safely guarded, because of the manner in which the guard was fastened, considered in connection with the character of the forces that were exerted upon it while the mill was in operation.

2. It is next urged that the deceased knew half an hour before he was injured that the guard had become detached, and, knowing this fact, continued at his work and thereby assumed the hazard. The obvious answer to this contention is that under the provisions of sec. 1636*jj*, Stats. (Laws of 1905, ch. 303), an employee does not assume the hazard of an unguarded gearing by continuing to work around the same after he knows of its existence. *Klotz v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770; *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 187, 120 N. W. 839. But it is argued that sec. 1636*jj* should not be held to apply to a case such as this, where the master had provided a sufficient guard in the first instance which had become temporarily displaced, and from which displacement injury resulted before the master had any knowledge, actual or constructive, of the displacement. We cannot agree to this construction or read any such exception into the statute. The jury found that the defendant was negligent in not safely guarding the gearing in the first instance, as required by sec. 1636*j*, Stats. (1898), and we have already said that there was evidence to support such finding and also a finding that such negligence was the proximate cause of the injury. Sec. 1636*jj* clearly exculpates the employee from that species of contributory negligence known as assumption of hazard in such a case, although it does not cover other phases of contributory negligence. *Lind v. Uniform S. & P. Co., supra,* and cases cited.

3. It is further argued that the deceased was guilty of

other phases of contributory negligence aside from assumption of hazard.   No one saw the deceased when he was first caught in the gearing, and just what he was doing or how he happened to be caught rests in conjecture.   Certainly there is no testimony in the case showing that he became entangled in the gearing because of some act of negligence of which he was guilty at the time he was injured.   Contributory negligence being a matter of defense, the burden was upon the defendant to establish the same by affirmative evidence, unless it was shown by the evidence offered by the plaintiff, and there was no such proof in the case.

But it is urged that the deceased knew that the guard was provided for his protection as well as for the protection of other employees of the defendant; that he knew it had become displaced half an hour before the injury occurred; that he knew that in the performance of his duties he was required to work in close proximity to this gearing a very considerable part of the time; that he knew this exposed gearing was exceedingly dangerous, and that he had the right to suppose that the master would immediately replace the guard as soon as it had knowledge that such guard was off; that the contrivance was a simple one, consisting of a board three feet long and six inches wide that could be temporarily put back in place by the servant without difficulty, and that the deceased was guilty of contributory negligence in failing to notify the master when he knew that the guard was off or else in failing to put the same back in place.   There would be little doubt that these facts would defeat a recovery under the doctrine of *Howard v. Beldenville L. Co.* 129 Wis. 98, 114, 108 N. W. 48; *Yezick v. Chicago B. Co.* 138 Wis. 342, 120 N. W. 247, and other cases, were it not for secs. 1636$j$ and 1636$jj$ of our statutes.   Where reasonably safe machinery has been furnished to the employee, which becomes out of repair during its operation, and the master has no knowledge of that fact and has had no reasonable opportunity to acquire such knowledge and

remedy the defect, while the servant, with knowledge of the·
danger, continues in his employment, the servant is generally
held to have assumed the risk.    But we have already said that
the servant does not assume the risk of an unguarded gearing·
even where the guard has become displaced and the master
has had neither actual nor presumed knowledge of the defect,.
provided the gearing was not safely guarded in the first in-
stance.    The appellant relies on the case of *Blahnik v. Cen-
tral C. Co.* 142 Wis. 167, 125 N. W. 317, as holding that the·
deceased was negligent in failing to either replace the guard
or to notify the master that it was not in place, and, in so far·
as the facts of the case are identical with those of the present
case, the decision is in point.    There the plaintiff's intestate·
was killed by being caught in unguarded gears and drawn
into rapidly revolving drums, and the alleged negligence of
the defendant consisted in failure to provide a suitable guard·
for the gearings and other machinery.    It appeared, however,.
that a suitable guard had been provided which was tempora-
rily out of place; that the deceased, an oiler, was at times·
called upon to assist in making repairs; that the guard could
be put back in place without difficulty; that it was extremely
dangerous to oil the machinery in the absence of the guard;
that deceased had ample time in which to replace the guard;.
and that if he desired he might shut down the machinery
while he was oiling it.    In the case before us it does not ap-
pear that the deceased had the appliances at hand to fasten
the guard back in place.    There was evidence tending to·
show that he was occupied with his work all the time and that
he was "kept on the jump" at least a part of the time.    He·
apparently had no authority to shut down the mill.    The·
character of his work was such that if he left his place of em-
ployment to hunt up the foreman or millwright, the mill·
might have to cease operations until his return; for aught we·
know he might have been subject to censure or even to dis-
charge had he pursued such a course.    It was not shown that.

the deceased was advised that he might leave his place of work to search out some person in authority for the purpose of notifying that person of the sudden danger to which he was subjected. The facts of the two cases are quite dissimilar. In the *Blahnik Case* it was obviously the duty of the employee to put the guard in place before proceeding to oil the gearing. It is by no means obvious that the deceased either should have replaced the guard here or notified the master so to do. The question of decedent's negligence was for the jury to determine in the instant case. It is true that the master here furnished a guard which would have protected the deceased had the same remained in place, and that the master had no knowledge that the guard had become displaced, while the servant had, and it may seem somewhat extreme to hold the master liable under the circumstances. But if the master was originally at fault in failing to securely fasten the guard which it provided, it must suffer the consequences of such negligent act.

4. The first question in the special verdict was as follows:

"Did the defendant ever securely guard the gearing of the machine at which the deceased, Philip La Pointe, was injured before said accident?"

In reference to this question the court charged the jury, among other things:

"By securely guarding it is meant that the defendant should guard the gearing safely, that the persons who work about the building *should be secure against danger or violence while performing their work.*"

Exception was taken to the portion of the charge quoted and error is predicated thereon.

We will first consider whether the charge was erroneous, and, if it was, then whether it was prejudicial. The language used is not qualified in any way elsewhere in the charge. We think the jury would naturally understand from this charge that it was the defendant's legal duty to so guard this gearing

that injury to an employee could not result therefrom.     The
language of the court is that the gearing should be so safely
guarded that the employee *"would be secure against danger or
violence while performing his work."*     Even though the
guard was an ordinarily safe one, or an extraordinarily safe
one for that matter, still, if injury or violence resulted there-
from, then the guard was unsafe under the instruction.     The
instruction practically made the defendant an insurer of the
employee against injury from the gearing.     It has been de-
cided by this court that this is not a correct statement of the
duty of the defendant under sec. 1636*j*, Stats. (1898).     This
section as construed by this court does not require the em-
ployer to insure his employees' safety against the possibility
of injury, nor does it require of him infallibility nor om-
niscience.     It requires him first to decide whether the gear-
ing is so situated as to be dangerous to employees in the dis-
charge of their duty, and, second, to securely guard or fence
it if dangerous.     He must use ordinary care and prudence in
deciding the first question, and decide it as ordinarily careful
and prudent employers under like circumstances, in honest
exercise of their judgment, would decide it.     If such an em-
ployer could reasonably apprehend that injury might result
to an employee in the discharge of his ordinary duties from
the unguarded gearing, then it is dangerous and must be
guarded, and he must also proceed to furnish such a guard, or
at least as effective a guard as such ordinarily careful and
prudent employers under like circumstances would and do
deem it their duty to furnish.     This is a secure guard within
the meaning of the law.     *Guinard v. Knapp-Stout & Co. Co.*
95 Wis. 482, 70 N. W. 671; *Powalske v. Cream City B. Co.*
110 Wis. 461, 86 N. W. 153.     The only exception to the last
proposition is that if the guard so ordinarily furnished be ob-
viously dangerous it will not be deemed sufficient.     *Yazdzew-
ski v. Barker,* 131 Wis. 494, 111 N. W. 689.

In the *Guinard Case* the plaintiff was injured by a revolv-

ing shaft which was not guarded. The statute then in force
(subd. 2, sec. 1636*f*, S. & B. Ann. Stats.) required shafting
to be securely guarded if so located as to be dangerous to em-
ployees while engaged in performing their ordinary duties.
The precise question presented was whether the master was
negligent in failing to guard, and, of course, involved his duty
under the statute in this regard. This court held that it was
reversible error not to charge the jury unqualifiedly that "if
the defendant furnished a place which was as safe and free
from danger as other persons of ordinary care engaged in like
business and under like circumstances ordinarily furnish,
then you will find for the defendant on such fact." The
above quoted instruction was given and held to be correct, but
the judgment was reversed because the trial court added these
qualifying words: "But not if you find that places provided
by such other employers of labor for their workmen or serv-
ants are not reasonably safe places in which their men are
obliged to work." The court, after some considerable dis-
cussion of the question, holds that an employer is bound to
exercise ordinary care only in guarding machinery which the
statute provides must be guarded.

In *Powalske v. Cream City B. Co., supra,* the plaintiff was
injured by coming in contact with an unguarded shaft, which
is one of the appliances specifically named in sec. 1636*j*,
Stats. (1898). In that case the court said:

"The statute does not require every shaft in a factory to be
guarded or fenced, but only such as are so located as to be dan-
gerous to employees in the discharge of their duties. It does
not hold the owner of a factory, where machinery of the kind
it mentions is used, bound to anticipate every possible danger
to his employees that may in any event exist therefrom by rea-
son of its being unguarded. The statute must have a reason-
able, sensible construction. It plainly contemplates that per-
sons required to comply with its provisions shall exercise or-
dinary judgment in determining whether machinery should
be guarded, and that, in such exercise, they shall bring to bear

upon the subject ordinary prudence and intelligence under the circumstances of each particular case."

Continuing, the court holds that, unless the employer had reasonable ground to apprehend that an accident might happen to the employee while engaged in performing his work, there was no breach of duty in failing to provide a guard.

There can hardly be any justification for the claim that, while the employer must exercise only ordinary care in discovering whether a gearing or a shaft should be fenced or guarded, yet, having discovered that a guard must be put in place, such guard must afford an absolute protection to the employee at all times and under all circumstances when he is engaged in the line of his employment. If only ordinary care is required in the first place in discovering a defect, ordinary care is all that is necessary in guarding it.

If this rule be wrong, then the court was wrong in holding in *Klotz v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770, that, while sec. 1636*jj,* Stats. (Laws of 1905, ch. 303), took away the defense of assumption of hazard where sec. 1636*j,* Stats. (1898), had been violated, still the "employer's right to the defense of other phases of contributory negligence" was not taken away; and the court was in error again in approving of this decision in *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839.

If it be the duty of the master to insure the employee against danger from an unguarded gearing, and to make it so safe that the employee cannot get hurt therein, then the servant has a perfect right to rely on this legal duty and to assume that it will be performed, and in the nature of things he cannot be guilty of any act of negligence that would defeat a recovery. He might, as against any kind of a guard, manage to injure himself if he set about to do so, but this would not be negligence. The principle involved is very closely analogous to the principles held applicable to the common-law duty of an employer to furnish to an employee a safe place to

work.    That duty is to furnish a place reasonably safe; *i. e.*
a place as safe and free from danger as other persons of ordi-
nary care and prudence in like business and under like cir-
cumstances ordinarily furnish, subject only to the limitation
as to obviously unsafe places above indicated.    *Jensen v.
Hudson S. Co.* 98 Wis. 73, 79, 73 N. W. 434; *Prybilski v.
Northwestern C. R. Co.* 98 Wis. 413, 74 N. W. 117; *Innes
v. Milwaukee,* 96 Wis. 170, 70 N. W. 1064; *Sladky v. Mari-
nette L. Co.* 107 Wis. 250, 251, 83 N. W. 514; *Yazdzewski
v. Barker,* 131 Wis. 494, 111 N. W. 689.    So the true rule, .
subject to the limitation referred to, is that, if the employer
furnish such a guard as is in general use among employers of
ordinary caution in the same line of business and under the
same circumstances, he has discharged the duty imposed upon
him, and the guard so furnished is in a legal sense reasonably
safe and the dangerous machinery has been securely guarded
within the meaning of the statute.    This rule of law requires
the master to exercise ordinary care in providing a guard or
fence for such machinery as is required to be guarded or
fenced.    That given by the trial court required something be-
yond even extraordinary care, in that it held him liable if in-
jury resulted.    There are cases in which the trial court has
referred to the language of sec. 1636*j* without attempting to
explain the meaning thereof.    There are cases in which this
court has done likewise.    But in no case in this court, where
the question was squarely raised and presented, has the court
decided that the rule established by the cases cited herein is
not good law, and in no case has it been said that machinery
and appliances are not securely guarded when the owner ex-
ercises the degree of care in reference thereto called for by the
established rule.    We conclude that the trial court erred in
giving the instruction under consideration.

The judgment should not be reversed, however, unless it
appears that the erroneous instruction has affected the sub-
stantial rights of the defendant.    Ch. 192, Laws of 1909·

(sec. 3072m, Stats.).    Did it do so?    At best, the question
was a close one as to whether the defendant was guilty of any
act of negligence in providing the guard in question.    The
defendant strenuously contends in this court that the evidence
does not support the finding of the jury in this behalf.    The
court submitted the first question to the jury presumably be-
cause it dealt with a disputed question of fact, and we are sat-
isfied that upon the evidence the jury might well have found
that the defendant was free from negligence.    So we have a
vital question in the verdict on which the jury might have
found in favor of either party.    It seems to us that the in-
struction, in effect, took this question from the jury and left
it nothing to decide, if the jury paid any heed to it, and in
view of the conclusion reached this court cannot say that the
instruction was not a controlling factor with the jury.    If
the machine should be so guarded that the deceased would be
"secure against danger or violence," then clearly the defend-
ant was at fault, because the deceased was injured by reason
of the failure of the master to provide a guard that would
protect him.    The process of reasoning by which the jury
would naturally reach the conclusion which it did is simple,
direct, and well nigh obvious: The master should have pro-
vided a guard that would have prevented the injury.    He did
not do so.    Therefore he did not perform his duty by prop-
erly guarding the gear.    A contrary conclusion could not well
have been reached unless the jury wholly disregarded the in-
struction.    The prejudice that might result from the instruc-
tion was further emphasized by the receipt of testimony,
against objection, showing that a sheet-iron guard could be
placed over the gearing and securely fastened without impair-
ing the usefulness of the machinery.    If an erroneous instruc-
tion can be regarded as prejudicial in any case, we fail to see
any escape from the conclusion that the error we are consid-
ering was substantial and that there must be a new trial be-
cause of it.    The cases of *Bodenheimer v. C. & N. W. R. Co.*

140 Wis. 623, 123 N. W. 148; *Ripon H. Co. v. Haas,* 141 Wis. 65, 123 N. W. 659; and *Schumacher v. Tuttle P. Co.* 142 Wis. 631, 126 N. W. 46, were all decided since ch. 192, Laws of 1909 (sec. 3072*m,* Stats.), was enacted, and the conclusions reached in those cases show that judgments are still reversed in this court for giving erroneous instructions, when they are prejudicial, and for refusing to give proper and material instructions when requested.

5. The witness Elfstrom testified that the gearing could have been guarded by using a sheet-iron covering instead of hemlock boards; that such a guard could have been fastened on the roller bed; and that so fastened it would not have interfered with the use of the machine. The evidence was objected to and exception taken to the rulings of the court holding it competent. The evidence was not competent and should not have been received. Where the master insists that it is not feasible to guard dangerous machinery at all, it is held admissible to show that a guard was provided after injury resulted from the exposed machinery. *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839, and cases cited. Such evidence is receivable for no other purpose than to show that the machinery might have been guarded. But it is not competent to show that some kind of a guard should have been used which in the judgment of a witness might be more efficient than that provided. So long as the master uses the ordinary appliances commonly used by ordinarily prudent men, and has disobeyed no law of the land, he has fulfilled his duty, unless, perchance, such appliances are obviously dangerous. *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671; *Innes v. Milwaukee,* 96 Wis. 170, 70 N. W. 1064; *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27, 30, 71 N. W. 814; *Jensen v. Hudson S. Co.* 98 Wis. 73, 73 N. W. 434; *Boyce v. Wilbur L. Co.* 119 Wis. 642, 97 N. W. 563; *Yazdzewski v. Barker,* 131 Wis. 494, 111 N. W. 689. No claim was made in this case that the gearing could not be guarded. The appel-

lant did provide a guard for the gearing and contends that it discharged its full duty in so doing. It is unnecessary to decide whether the court would consider the error of sufficient materiality to work a reversal of the judgment. As the case must be sent back for a new trial for other reasons, the error can be readily avoided on another trial.

Other errors are argued, none of which affect the plaintiff's cause of action. As the questions are not likely to arise on a subsequent trial of the cause, we refrain from discussing them.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

The following opinion was filed December 13, 1910:

TIMLIN, J. (*dissenting*). Sec. 1636*j*, Stats. (1898), provides:

"The owner or manager of every place where persons are employed to perform labor shall surround every stationary vat, pan or other vessel into which molten metal or hot liquids are poured or kept with proper safeguards for the protection of his employees, and all belting, shafting, gearing, hoists, fly-wheels, elevators and drums therein which are so located as to be dangerous to employees in the discharge of their duty shall be securely guarded or fenced."

The particular provision of the foregoing statute applicable to the instant case is:

"All . . . gearing . . . so located as to be dangerous to employees in the discharge of their duty shall be securely guarded or fenced."

It seems quite plain that if the gearing is in fact such gearing as the statute describes, viz., one so located as to be dangerous to employees in the discharge of their duty, the duty to guard or fence it is mandatory; and the manner in which it shall be guarded or fenced is in like case covered by manda-

tory statute, viz., it shall be "securely guarded." There should be no great difficulty in the construction of such a statute if we approach it with judicial equanimity. There is no contention in this case that the statute makes the employer an insurer. There is no contention that it takes away the defense of contributory negligence. Panic on these two propositions, self-suggested, seems to be responsible for the extraordinary construction first attempted to be given to this statute in *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, and returned to and revived with additional and accumulated error by the majority opinion in the instant case, notwithstanding many cases in this court later than the *Guinard Case* and inconsistent therewith. Is there any novelty or hardship in holding a person liable for failure to discharge a statutory duty if such failure is the proximate cause of an injury to another for whose safety the statutory duty was imposed? Speaking of the same statute it was held in *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563, a case later than the *Guinard Case,* and strangely enough not referred to in the majority opinion in the instant case:

"The statute of this state requires all gearing so located as to be dangerous to employees when engaged in their ordinary duties to be securely guarded so as to be safe to such employees in such employment. If the sprocket wheel was so located as to be dangerous to plaintiff while engaged in his ordinary duties, unless guarded in some proper way, then the statute applies and the absence of the guard was negligence *per se.*"

If this is the law, then the opinion of the majority is not law, and it must be apparent to every one, layman or lawyer, that this latter case conforms to the statute, while the majority opinion in the instant case does not. The majority opinion in the instant case puts forward as an excuse for departing from the statute that otherwise the venerable and valuable defense of contributory negligence might or would be excluded and that otherwise the statute might make the em-

ployer an insurer of the safety of his employee. These twin specters 'of the imagination are also disposed of by former cases in this court.

"This court has distinctly held that where the law requires some particular thing to be done by a person to guard the personal safety of others, a failure to perform the duty so imposed constitutes actionable negligence at the suit of a person of that class, injured by such failure of duty, without contributory negligence on his part. *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N. W. 1041." *Klatt v. N. C. Foster L. Co., supra.* See, also, *Sharon v. Winnebago F. Mfg. Co.* 141 Wis. 185, 124 N. W. 299.

Speaking of an ordinance cognate in character to this statute this court said:

"If there was such an ordinance and it was valid, it was error to leave the question to the jury to say whether a violation thereof constituted negligence." *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 358, 85 N. W. 1036, and cases cited.

Many other cases will be found cited in these opinions. So that the doctrine is neither novel nor dangerous, nor does it exclude the defense of contributory negligence nor make the master an insurer. The majority in the instant case simply frightened themselves without cause. Quoting again from *Klatt v. N. C. Foster L. Co., supra:*

"True, it is sometimes said that the omission of a statutory duty is not negligence *per se,* but only evidence of negligence. That rule applies only where the injury caused is not within the scope intended to be guarded against by the statutory requirement, as in cases of injuries to persons, contributed to by failure to fence railway tracks, the primary purpose of which is to prevent injuries to cattle and other domestic animals. *Schmidt v. M. & St. P. R. Co.* 23 Wis. 186. In *Union P. R. Co. v. McDonald, supra* [152 U. S. 262], and *Hayes v. M. C. R. Co., supra* [111 U. S. 228], the distinction is clearly pointed out between cases where omission of a statutory duty is negligence *per se;* and where evidence of negligence only."

This is also in conflict with the majority opinion in the instant case.

In *Van de Bogart v. Marinette & M. P. Co.* 132 Wis. 367, 106 N. W. 805, an instruction to the jury concerning the statute in question and containing this sentence was approved:

"The failure to guard or fence a set-screw on a shaft so located as to be dangerous to employees while in the discharge of their duty would be negligence."

This, as I understand it, makes the negligence of the employer a matter of law, provided the shafting is so located, and therefore that decision is in conflict with the decision in this case. Given a shaft so located as to be within the calls of the statute, if the failure to guard it is negligence *per se,* or if the duty to guard it is a duty imposed by law, then it follows that it is no excuse for the defendant that other persons also disregard this legal duty or commit other acts which also constitute negligence *per se.*

In *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694, judgment for the plaintiff was affirmed notwithstanding this instruction given to the jury:

"The law requires that the employer shall securely guard or fence shafting which is so located as to be dangerous to employees in the discharge of their duties, and if you find that the shafting in question, under all the facts and circumstances proven, was so located as to be dangerous to the plaintiff in the discharge of his duties in the line of his employment at the time of the injury to him, you should answer this question 'No.' "

The question so peremptorily directed to be answered in the negative was this: ".Was such place so furnished by the defendant a reasonably safe place in which to do his work ?" Here is a direct instruction making it a matter of law that the place was unsafe if the shaft was so located as to be dangerous to employees in the discharge of their duty and unguarded. This is also the necessary result of the decisions

in *Reffke v. Patten P. Co.* 136 Wis. 535, 117 N. W. 1004; *Hoffman v. Rib Lake L. Co.* 136 Wis. 388, 117 N. W. 789; and *Miller v. Kimberly & C. Co.* 137 Wis. 138, 118 N. W. 536, all cases resting on this statute.    In *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N. W. 342, the court said:

"What would constitute a reasonable guarding of an elevator entrance under the circumstances *was determinable with reference to the mandate of the statute that it must be securely guarded.    Nothing short of that would be a reasonable guarding.*"

This is also in conflict with the opinion in the instant case. Now if we compare what was said by this court in these decisions with what was said by the court below in the instant case to the jury for which the judgment below was reversed, not selecting a detached sentence from the instructions below as is done in the majority opinion, but giving the context, we will find that the instruction given by the court below was but a paraphrase of the foregoing language quoted from this court in *Klatt v. N. C. Foster L. Co., supra; Van de Bogart v. Patten P. Co., supra; Walker v. Simmons Mfg. Co., supra;* and *Anderson v. Horlick's M. M. Co., supra.*    The instruction in the instant case in the court below was as follows:

"The law requires the employer of labor, where the laborer is required to work about dangerous gearing which is so located as to be dangerous to the workmen, to securely fence or guard the same.    It was the duty under this statute for the defendant to securely guard the gearing of the machine in question.    The evidence of the plaintiff, the plaintiff claims, tends to prove that the defendant was guilty of negligence in not complying with the law in this respect.    The defendant claims that its evidence tends to prove that the gearing of the machine in question was securely guarded.    *By securely guarding it is meant that the defendant should guard the gearing safely, that the persons who work about the gearing should be secure against danger or violence while performing their work.*    The statute in relation to this question reads as follows:" (Reads statute to the jury.)

That sentence from the foregoing instruction criticised by the majority opinion, and for the giving of which the judgment was reversed, in substance means, and could only be taken to mean, that by "securely guarding it" is meant the defendant should securely guard the gearing in question. It is not very instructive, but at the same time it is not harmful or misleading. Great stress is laid on the closing words of the sentence, "that persons who work about the gearing should be secure against danger or violence while performing their work." It is said, unfairly I think, that this makes the master an insurer of the safety of his servant. To me it merely says that a secure guard is one so constructed that persons who work about the gearing should be secure against danger or violence while performing their work. Not a very enlightening or accurate definition, it is true, but it will compare very favorably with many definitions found in the reports of this court. I can see no harm in this extemporaneous attempt of the circuit court. The plain meaning of the whole instruction is not that the employee should be secure against danger or violence from other things than the unguarded gearing, and not that he should be secure against danger or violence from this latter in case of his contributory negligence, because the question of contributory negligence was also separately submitted to the jury under proper instructions. If circuit judges are to be held down to such technicalities in instructing the jury, and judgments reversed for the use of language in such instructions which is the substantial equivalent of the language used by this court in its opinions on the same subject, we are extending mere technicalities beyond reason and disregarding ch. 192, Laws of 1909 (sec. 3072m, Stats.), because it cannot be fairly said that any jury could be misled by the subtile and hypercritical distinctions which might be traced out between the language employed by the circuit court in this case and the disposition of the same subject in the above cited decisions of this court. Compare it with the ex-

cerpt from *Anderson v. Horlick's M. M. Co., supra,* above
quoted, or the excerpt from *Klatt v. N. C. Foster L. Co.,
supra.* I do not remember to have ever seen an opinion of a
court of last resort containing so many erroneous statements
of law as the majority opinion in the instant case. Setting
forth some of these as illustrative and quoting from the opin-
ion as approved by the majority and filed:

"It [the statute] requires him [the employer] first to de-
cide whether the gearing is so situated as to be dangerous
to employees in the discharge of their duty, and, second, to
securely guard or fence it if dangerous. He must use or-
dinary care and prudence in deciding the first question, and
decide it as ordinarily careful and prudent employers under
like circumstances, in honest exercise of their judgment,
would decide it. If such an employer could reasonably ap-
prehend that injury might result to an employee in the dis-
charge of his ordinary duties from the unguarded gearing,
then it is dangerous and must be guarded, and he must also
proceed to furnish such a guard, or at least as effective a guard
as such ordinarily careful and prudent employers under like
circumstances would and do deem it their duty to furnish.
This is a secure guard within the meaning of the law. *Gui-
nard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671;
*Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153.
The only exception to the last proposition is that if the guard
so ordinarily furnished be obviously dangerous it will not be
deemed sufficient. *Yazdzewski v. Barker,* 131 Wis. 494, 111
N. W. 689. . . . So the true rule, subject to the limitation
referred to, is that, if the employer furnish such a guard as is
in general use among employers of ordinary caution in the
same line of business and under the same circumstances, he
has discharged the duty imposed upon him, and the guard so
furnished is in a legal sense reasonably safe and the danger-
ous machinery has been securely guarded within the meaning
of the statute."

Observe, first, that the opinion departs from the ancient
and long established rule of this court that the standard of
care by which the conduct of the person accused of negligence
is tested "is such care as the great mass of mankind ordinarily
exercise under the same or similar circumstances." *Nass v.*

*Schulz,* 105 Wis. 146, 81 N. W. 133; Simmons, Wis. Dig. 2475 and cases. In the majority opinion negligence is measured by the care which employers ordinarily exercise. If employers are to be thus privileged, why not measure the plaintiff's care by the care which the great mass of employees ordinarily exercise under the same or similar circumstances? Again, employers as a class have duties imposed upon them by this statute. All employers is a large class and necessarily includes "employers of ordinary caution in the same line of business and under the same circumstances." So that if employers of ordinary caution, etc., disregard this statute and set it at naught, or even if all employers disregard the statute and set it at defiance, each one when sued for damages may escape under this decision by proving that the others did not comply with the statute. This grants an extraordinary class privilege. It nullifies the statute if employers wish to nullify it. I regard this as a wholesome statute, and I believe it is generally so regarded. How can the legislature ever enact statutes which shall be sufficient for the amelioration of the condition of the laboring men, or to lessen the annual slaughter of employees engaged in the manufacturing industries, if such statutes are to be whittled away by construction in this manner. I say whittled away, because the decision places the liability of an employer with reference to dangerous machinery precisely upon the same ground that it would occupy at common law in the absence of this statute. But I do not wish to be understood as stating that the opinion would be correct if the writer had used the words above quoted from *Nass v. Schulz* instead of the word "employers." It would be wrong in the former case and worse in the latter. No person can excuse his noncompliance with statutory duties on the ground that in the effort to obey the statute he exercised "such care as the great mass of mankind ordinarily exercise under the same or similar circumstances."

"However rigidly a court may uphold the right of a master to follow general usage, it is clear that evidence of a custom

to disregard a law requiring employers to use an appliance calculated to preserve their servants from some particular danger can never be admissible where the question of the exercise of due care on the employer's part is raised." 1 Labatt, Mast. & Serv. § 47, citing *Cayzer v. Taylor,* 10 Gray, 274, 69 Am. Dec. 317.

It does not, however, require authority to support such a self-evident proposition. Yet the opinion criticised will bear no other reasonable construction than that an employer commanded by sec. 1636*j,* Stats. (1898), to cover a gearing in fact located as therein described is not absolutely required to do so, but only to decide whether the gearing is so situated and use ordinary care and prudence in so deciding, and decide it as ordinarily careful and prudent employers under like circumstances, in honest exercise of their judgment, would decide it. This means that the employer might urge in justification of his disregard of this statute that he honestly decided not to cover the gearing because he thought it not so located as to be dangerous, although as a matter of fact it may be so located, and that he did so as ordinarily careful and prudent employers under like circumstances, in honest exercise of their judgment, would decide it. He and they decide upon what is their duty under the statute. Next, the statute says that the gearing shall be securely guarded, but the opinion says No, that the employer is only required to furnish "at least as effective a guard as such ordinarily careful and prudent employers under like circumstances would and do deem it their duty to furnish." This results in giving to a class designated in a statute as the subjects of regulation the right to determine the diligence of its own members by comparisons among themselves, and thus to decide whether or not they will comply with the statute, and whether or not, having arrived at the conclusion that a guard is required, they will conform to the statute and provide a secure guard, or merely one which they and others of their class "would and do deem it their

duty to furnish." This is, to say the least, extraordinary. It is neither good law nor justice nor good sense. Then again, the majority opinion contains this statement:

"If such an employer could reasonably apprehend that injury might result to an employee in the discharge of his ordinary duties from the unguarded gearing, then it is dangerous and must be guarded."

But only a few months ago this court said, speaking of the same statute:

"The law is cast in general terms. We cannot interpolate into it the word 'ordinary,' and test appellant's conduct by a different standard than the legislature, in the proper execution of its police power, created. Such limitation upon the duty to guard as might be indicated by the word 'ordinary' . . . the legislature manifestly did not intend should exist, from the fact that the word was industriously, by amendment [in 1898], dropped from the law as it formerly existed; the words 'discharge of their duty' being substituted for 'engaged in their ordinary duties.'" [*Miller v. Kimberly & Clark Co.* 137 Wis. 138, 142, 118 N. W. 536.]

We who are capable of a record like this should view with a good deal of liberality and charity the shortcomings of our brethren of the circuit bench. Speaking of the prejudicial effect which the criticised instruction in the instant case must have had, the majority opinion goes on to say:

"The process of reasoning by which the jury would naturally reach the conclusion which it did is simple, direct, and well nigh obvious: The master should have provided a guard which would have prevented the injury. He did not do so. Therefore he did not perform his duty by properly guarding the gear."

This part of the opinion failed to keep in mind that we had decided that in case the gearing was so located as to be dangerous the failure to cover it was negligence *per se* (*Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563); that there was a finding based upon sufficient or undisputed evidence that the

failure to guard was the proximate cause of plaintiff's injury; and that this court has also decided that "what would constitute a reasonable guarding . . . under the circumstances was determinable with reference to the mandate of the statute that it must be securely guarded. Nothing short of this would be a reasonable guarding." *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N. W. 342. With these in mind, perhaps the instruction would not have been considered so prejudicial. I cannot too vigorously emphasize the fact that the majority opinion brushes away the statute entirely and places the liability of the master on the same ground and subject to the same limitations and the same defenses as at common law.

I am authorized to say that Mr. Justice SIEBECKER and Mr. Justice KERWIN concur in this dissent.